**ROTELLINI, Appellant,**

v.

**WEST CARROLLTON BOARD OF ZONING APPEALS, Appellee.**

[Cite as *Rotellini v. West Carrollton Bd. of Zoning
Appeals* (1989), 64 Ohio App.3d 17.]

Court of Appeals of Ohio,
Montgomery County.

No. 11338.

Decided Aug. 29, 1989.

Bradley C. Smith, for appellant.

*Patrick G. Carney*, for appellee.

GRADY, Judge.

Lana J. Rotellini appeals the decision of the court of common pleas affirming the determination of the Board of Zoning Appeals of the city of West Carrollton denying Rotellini's application to construct and operate a drive-through carryout store. We find the action of the board of zoning appeals was an arbitrary application of the Zoning Code of the city of West Carrollton and contrary to law. We reverse the decision of the court of common pleas and order the city of West Carrollton to issue the zoning permit requested by appellant Rotellini.

I

Proposed Use

From the record we may determine that appellant Rotellini wishes to construct and maintain a retail business selling beverages, prepackaged foods, and other items typically found in a "convenience" store. The business will be situated in a building into which patrons will drive their vehicles, in which they will be served. After the sale is completed the patron will immediately drive his vehicle out the opposite end of the building, onto the street, and away from the property. It is not the intention of appellant that patrons will consume their purchase while on the property and no facilities will be employed for that purpose. Some patrons may enter on foot, but their transactions will follow the same pattern.

II

Posture of the Case

Appellant Rotellini sought approval of her plan to construct her proposed business on five acres of land she owns in West Carrollton. The Zoning Administrator of the city of West Carrollton denied approval, and Rotellini appealed to the city of West Carrollton Board of Zoning Appeals. The board also denied the request. Rotellini next appealed to the court of common pleas, pursuant to R.C. Chapter 2506. That court sustained the board of zoning appeals. Rotellini then perfected her appeal to this court through a timely notice of appeal. She makes one assignment of error:

"The trial court's decision and order affirming the decision of the City of West Carrollton Board of Zoning Appeals that a drive-thru carry-out is a prohibited use in a B–1 zoning district pursuant to the City of West Carrollton Zoning Code was unconstitutional, illegal, arbitrary, capricious, unreasonable

or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record.

## III

### Scope of Review

In an appeal of a zoning determination the court of common pleas must act under a presumption that the determination of a board of zoning appeals is valid, and the burden of showing invalidity rests on the party opposing the determination. *Miller Chevrolet, Inc. v. Willoughby Hills* (1974), 38 Ohio St.2d 298, 67 O.O.2d 358, 313 N.E.2d 400. The test to be applied by the court of common pleas is not whether a mere *legal justification* exists but whether the zoning ordinance involved bears a reasonable relationship to the public health, safety, welfare, or morals. *Cincinnati Bell, Inc. v. Glendale* (1975), 42 Ohio St.2d 368, 71 O.O.2d 331, 328 N.E.2d 808.

The review performed by the court of common pleas on appeal is not a trial *de novo* but an appeal on questions of law. *Vlad v. Cleveland Bd. of Zoning Appeals* (1960), 111 Ohio App. 70, 13 O.O.2d 427, 82 Ohio Law Abs. 602, 164 N.E.2d 797. The decision of the court of common pleas is appealable to the courts of appeal on questions of law. R.C. 2506.04. The authority of this court, therefore, is coterminous with that of the court of common pleas in reviewing assigned errors of law in determinations of boards of zoning appeals.

## IV

### Application of Zoning Code Restrictions

The Zoning Code of the city of West Carrollton provides, at Section 154.04(B):

" * * * no buildings or structures shall be erected or altered, nor any land within the corporate limits used in a manner prohibited by the regulations herein prescribed * * *."

The structure of the zoning code is such that it prohibits any use not consistent with its terms. It empowers the zoning enforcement officer (Section 154.08) and the board of zoning appeals (Section 154.12) to deny certification, and thus deny a use, if they find that proposed use contrary to the code. In that respect they are guided by the code's statements of principal permitted uses and conditional uses, and by the definitions of uses provided by the code itself. Section 154.01.

The authority of the city of West Carrollton to regulate the use of land within its boundaries by comprehensive zoning ordinance, providing for a variety and quantity of land uses deemed necessary to the orderly development of the city, is unquestioned. *Greenhills Home Owners Corp. v. Greenhills* (1966), 5 Ohio St.2d 207, 34 O.O.2d 420, 215 N.E.2d 403. The city may delegate tasks of interpretation of its zoning code to its zoning inspector and board of zoning appeals. Those decisions are, however, reviewable by the courts. R.C. 2506.04.

■ Zoning regulations deprive the owners of real property of certain uses of it, and are in derogation of the common law. Such regulations must, therefore, be strictly construed and not extended by implication. *Lykins v. Dayton Motorcycle Club* (1972), 33 Ohio App.2d 269, 62 O.O.2d 382, 294 N.E.2d 227.

■ Exemptions from the restrictive provisions of a zoning code are liberally construed in favor of the landowner, and language defining a "permitted use" is to be liberally construed in favor of permitting the use proposed by the owner. *State, ex rel. Spiccia, v. Abate* (1964), 6 Ohio App.2d 233, 29 O.O.2d 310, 95 Ohio Law Abs. 94, 217 N.E.2d 709.

■ Zoning provisions are strictly construed against the authority or person seeking to prohibit the proposed use as a violation of a zoning code. Even so, a court may set aside or vacate a denial of approval by the authority only if the record supports the conclusion that the application of the zoning code is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. R.C. 2506.04.

## V

### Basis for Denial of Certification

■ The zoning administrator and the board of zoning appeals found that Rotellini's business constituted a "drive-in restaurant," a use prohibited in the B–1 zoning district in which the land is situated. Rotellini maintains that her proposed use does not fit that designation and, in fact, is not mentioned in the West Carrollton Zoning Code.

The West Carrollton Zoning Code adopts the designation B–1 for a "Convenience Commercial District." In its section 154.47, the code states:

"The purpose of the B–1 Convenience Commercial District is to designate and reserve certain land areas for convenience, commercial, personal services,

and certain types of business and professional uses located in convenient and close relationship to nearby areas of surrounding development."

The foregoing statement of purpose shows that the intent of the city of West Carrollton is to limit its B–1 zoning district to commercial uses primarily serving the immediate area.[1]  However, while a statement of intent is a useful guide, it does not constitute a prohibition or proscription.  Those limitations must be stated specifically in the zoning code or found by inference allowed by law.

The "Principal Permitted Uses" within a B–1 District are set out at Section 154.48 of the code:

"(A) Retail sales and services.  Any local convenience retail and/or service uses including[,] but not limited to, grocery or other food stores, drug stores, barber shops, beauty salons, bakery shops, dry cleaning and laundry pick-up stations, laundromats, and the like, which supply commodities or perform services primarily serving the area in which they are located.

"(B) Business and professional offices.  Finance, insurance, real estate offices and banks, professional offices.

"(C) Restaurants.  *Drive-in restaurants*, taverns, and cocktail lounges *are not permitted.*

"(D) Studios-commercial, including arts and crafts, dance, music, commercial photography, and similar commercial operations."  (Emphasis added.)

Rotellini has been denied her proposed use because the zoning inspector and the board of zoning appeals determined it to be a "drive-in restaurant" prohibited by Section 154.48(C).

The term "restaurant" appears in three separate definitional portions of Section 154.01 of the Zoning Code.

" '*RESTAURANT, CARRY–OUT.*'  An establishment whose primary function is the offering of food and beverages which are sold only inside the building, and are usually packaged to be carried and consumed off of the premises, but may be consumed within the restaurant building or on the premises.

" '*RESTAURANT, DRIVE–IN.*'  An establishment offering food and beverages which are sold within the building, or to persons while in motor vehicles in the area designated for drive-in service, and may be consumed on or off the premises.

---

1.  In this respect it contrasts with the stated purpose of the city's B–2 zoning district, "General Commercial District," which is to serve the "general commercial needs of the residents of the city and surrounding areas."  West Carrollton Zoning Code, Section 154.37.

" '*RESTAURANT, SIT–DOWN.*' An establishment whose primary function is the offering of food and beverages which are sold and normally consumed within the restaurant building."

Each definition has two components: the nature of the retail sales conducted and the anticipated location on or at which products purchased are consumed. To fit within any of the three definitions any use must satisfy both components.

West Carrollton maintains that Rotellini's business will be a "drive-in restaurant." As described by Rotellini her business reasonably fits the second component of that definition, *i.e.,* "drive-in." Persons are served while in motor vehicles and may consume their purchases on or off the premises. Though it is most likely that purchases will be consumed off the premises, point of consumption is stated in the disjunctive and either will suffice.

The position of the zoning inspector weakens when the first component of the definition is addressed. The term "restaurant" is not independently defined in the code. Each of the three definitions quoted defines a restaurant as an establishment the primary function of which is the offering of food and beverages which are normally consumed or may be consumed on the premises. Rotellini's proposed business would sell food and beverages but would not be designed for consumption of food and beverages sold. Customers sitting in a single line of vehicles that moves regularly would not be expected to consume their purchases on the premises. West Carrollton's assertion that they might open their packages before moving on, or that Rotellini may some day install picnic tables for sidewalk service, will not suffice to present a prohibited use. The business is not designed to accommodate or encourage that activity, and the term "use" in the code is to be taken as the purpose designed or arranged by the operator, not an occasional happenstance.[2]

The term "restaurant" is defined variously as "[a] place where meals are served to the public," The American Heritage Dictionary of the English Language, New College Edition (1976) 1108, "an establishment where refreshments or meals may be procured by the public: a public eating house," Webster's Third New International Dictionary (1986) 1936, and "a place where food is prepared and served inside to be consumed on tables, although it may be taken out and consumed in cars," 3 Anderson, American Law of Zoning (3 Ed.1986) 185, Section 17.65. Under former R.C. 3731.01(B), 1953 H.B. No. 1, a

---

2. "The phrase '*USED FOR*' includes '*ARRANGED FOR,*' '*DESIGNED FOR,*' '*INTENDED FOR,*' '*MAINTAINED FOR,*' or '*OCCUPIED FOR.*'" Zoning Code, Section 154.05(F).

restaurant was defined as a "place where meals or lunches are served for consideration * * *."[3]

Ohio's Liquor Control Law, at R.C. 4301.01(B)(12), states:

" 'Restaurant' means a place * * * wherein, in consideration of the payment of money, hot meals are habitually prepared, sold, and served at noon and evening, as the principal business of the place. Such meaning excludes drugstores, confectionery stores, lunch stands, night clubs, and filling stations."

▆▆▆ The West Carrollton Zoning Code authorizes the zoning enforcement officer to interpret the Zoning Code. Section 154.08(B). It also empowers the board of zoning appeals to hear appeals of alleged errors of interpretation by the zoning officer (Section 154.12[C][1]) and to " * * * determine if uses not specifically mentioned in the zoning ordinance are similar to uses permitted within a district * * *." Section 154.12(C)(4). In so doing, those officials and bodies act in the exercise of the police power,[4] and their determination must be reasonable in order to be constitutionally valid. *Euclid v. Ambler Realty Co.* (1926), 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303.

Rotellini calls her proposed use a "drive-through." As described, it is reasonably similar to a "drive-in," as that term is used in the Zoning Code. Extension of that coverage to Rotellini is not unreasonable.

Rotellini's proposed use, as she describes it, does not bear a reasonable similarity to a "restaurant." Authorities cited above, and others, define a restaurant as a place where prepared meals are served. See Annotation (1939), 122 A.L.R. 1399, What Constitutes a Restaurant. Rotellini has not proposed serving or selling food prepared on the premises; she intends to sell packaged food and beverages to be consumed off the premises. The determinations of the zoning inspector and the board of zoning appeals that her proposed use constituted a "drive-in restaurant" were, therefore, arbitrary and unreasonable.

A review of all applicable portions of the West Carrollton Zoning Code compels the conclusion that the code simply fails to address or include the use

---

**3.** The predecessor of that statutory definition, G.C. 843–2 (108 Ohio Laws, Part I, 288, Section 3), was construed as applying only to those eating places where prepared lunches are served and not to places where food capable of being made into lunches is sold. 1927 Ohio Atty.Gen.Ops. No. 853, at 2–1519.

**4.** Zoning is a power of local self-government for municipalities in Ohio. Section 3, Article XVIII, Ohio Constitution, the Home Rule Amendment. *Pritz v. Messer* (1925), 112 Ohio St. 628, 149 N.E. 30.

proposed by appellant Rotellini.[5]  Her type of business, which she calls a drive-through or carryout, is a more recent phenomenon than a drive-in restaurant.[6]  Appellee West Carrollton argues that they offer similar problems of traffic congestion and control.  However, that similarity does not make Rotellini's proposed use a "restaurant."  Furthermore,

" * * * [T]raffic regulation must remain a byproduct of zoning activities, and the primary product must always be to insure the greatest enjoyment of one's land, taking into account the rights of others and the needs of the community.  Thus, if the present proposal is otherwise lawful and proper, the public authorities must find some manner of dealing with the traffic hazards * * *."  *State, ex rel. Killeen Realty Co., v. East Cleveland* (1959), 169 Ohio St. 375, 386, 8 O.O. 409, 415, 160 N.E.2d 1, 8.

## VI

### Conclusion

West Carrollton may limit the location of "drive-through carryouts" through its zoning code, but it may not do so by extensions of current regulations inapposite to that form of use.

The determinations of the West Carrollton zoning inspector and board of zoning appeals concerning appellant's proposed use were unreasonable and arbitrary and contrary to law.

We have not addressed whether appellant's business conforms to one of the principal permitted uses for B–1 zoning districts in the West Carrollton Zoning Code.  That question has not been raised and must be considered at the local level if appellant wishes to resubmit her application for certification.

───────

5.  We note that the vagueness of the regulation was also of concern to the board of zoning appeals.  The official report of the board's consideration of appellant's case includes the following:

"Mr. Brandewie gave the staff report.  Staff is requesting an informal zoning interpretation.  The question is whether or not a drive-thru carryout is classified or regulated by the definition of a drive-in restaurant.  Mr. Brandewie outlined the legal opinion given by the Law Director and the need for a definition of a drive-thru carryout.

"The Board discussed the existing definition as it relates to the proposed use.  It was also the consensus of the Board to request Planning Commission to consider a text change that would better define the proposed use.  After review and consideration, a motion was made by Mr. Horvat, seconded by Mr. Rankey, to agree with staff's interpretation classifying a drive-thru carry out as a drive-in restaurant and that Planning Commission take a look at this particular definition and define it more clearly.  The motion passed unanimously."

6.  The "drive-in restaurant" of thirty years ago, with "carhops" serving food to patrons parked in vehicles in stations around the premises, has almost wholly disappeared.  Thirty years ago the "drive-through carryout" was unknown.

The judgment of the court of common pleas is reversed, and the matter is remanded to that court for the issuance of orders provided by R.C. 2506.04 and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BROGAN and FAIN, JJ., concur.