**The STATE ex rel. ROSZMANN, Pros. Atty., Appellee,**

**v.**

**LIONS DEN, a.k.a. Lion's Den; Interstate Independent Corporation et al., Appellants.**

[Cite as *State ex rel. Roszmann v. Lions Den* (1993), 89 Ohio App.3d 775.]

Court of Appeals of Ohio,
Fayette County.

No. CA92–08–015.

Decided Aug. 9, 1993.

*Steven H. Eckstein,* Fayette County Prosecuting Attorney, and *James B. Grandey,* Assistant Prosecuting Attorney, for appellee.

*Berkman, Gordon, Murray, Palda & DeVan, J. Michael Murray, Lorraine R. Baumgardner* and *Jeremy A. Rosenbaum,* for appellants.

WILLIAM W. YOUNG, Judge.

Defendants-appellants, Interstate Independent Corporation, Michael F. Moran, Jim Keaton, Betty Davis, and Gary Earles, appeal a judgment of the Fayette County Court of Common Pleas finding the Interstate Adult Arcade ("the Arcade"), 9017 West Lancaster Road, Jeffersonville, Ohio, a "nuisance" as defined in R.C. 3767.01.

Undercover officers from the Fayette County Sheriff's Department and the South Central Ohio Task Force visited the Arcade on several occasions from January 1992 through March 1992. Upon entering the facility, the officers encountered a desk where an employee checked membership cards. During their initial visit, the investigators obtained a membership after producing identification, signing a form and paying a $1 fee. Also located in the entrance area are a change machine and a cashier.

The remainder of the facility's physical layout consists of a game and vending area and an arcade area. The arcade area contains thirty-two viewing booths. Each booth is equipped with a bench, a menu of sexually explicit videos, and a coin-activated monitor for viewing the videos. The video monitors operate only if the booth's door is closed and latched.

During their visits to the Arcade, the officers collected used tissues, paper towels and a used condom from the floor of various booths. Also, an officer used a cotton-tipped swab to collect a sample of a white substance he observed in one of the booths. Forensic testing of the tissues and paper towels revealed the presence of semen and pubic hairs. The condom and the cotton swab also contained traces of semen. In addition, the officers observed what appeared to be dry semen stains on the walls, floors and video monitors of the booths. Use of a blacklight confirmed the presence of these stains.

The officers reported that the area was not particularly clean and that the floors of the booths were "sticky." They also described the presence of employees referred to as "cleaners" who wore rubber gloves, swept and mopped the floors and collected paper towels and tissues from the booths and adjoining hallway.

The Arcade has no retail merchandise available for sale; however, all sexually explicit videos shown in the Arcade are sold in the Lions Den (a.k.a. Lion's Den Adult Bookstore), located in a separate structure adjacent to the Arcade. The Lion's Den Adult Bookstore is not involved in this appeal.

Plaintiff-appellee, John Roszmann, former Fayette County Prosecuting Attorney, filed a nuisance complaint against the owners and operators of the Arcade pursuant to R.C. Chapter 3767 on March 13, 1992. The complaint alleges that the Arcade is a public nuisance as "lewdness, assignation or prostitution is conducted, permitted, continued or exists" on the premises. As the case progressed, the trial court denied appellants' motions for dismissal and suppression of evidence. Thereafter, the court heard evidence on the state's motions for temporary and permanent injunctions. The court issued a temporary injunction on April 10, 1992 and a permanent injunction on July 15, 1992. The final order enjoins appellants from conducting a nuisance at the Arcade, orders the Arcade closed for one year and requires the sale of all personal property used in conducting the nuisance.

On appeal, appellants raise five assignments of error:

Assignment of Error No. 1:

"The trial court erred in denying defendants' motion to dismiss, in upholding the constitutionality of Chapter 3767 as applied to this case and in granting relief in the form of the closure of a private arcade and the forfeiture of personalty, * * * where the only evidence introduced against appellants was that in response to viewing non-obscene, constitutionally protected materials exhibited in private booths at the club, some members engaged in masturbation."

Assignment of Error No. 2:

"The trial court erred in failing to dismiss the complaint in refusing to enter judgment in appellants' favor, and in finding appellants liable * * * where the evidence introduced against appellants, that a small percentage of members acted in a manner contrary to the club's rules and policies, was insufficient, as a matter of law, to impose liability on appellants under Chapter 3767."

Assignment of Error No. 3:

"The trial court erred in failing to grant an evidentiary hearing and to suppress evidence seized from the interior of a private club * * * where that evidence was

seized, without a particularized warrant issued upon probable cause, by undercover officers who acted over an extended period of time with an investigatory purpose and not as patrons would be expected to act."

Assignment of Error No. 4:

"The trial court erred in closing the Arcade for any purpose at the temporary injunction stage of the proceedings * * *."

Assignment of Error No. 5:

"The trial court erred in failing to dismiss the complaint and in refusing to enter judgment in appellants' favor * * * on the ground that the definitional and liability provisions of Chapter 3767 are unconstitutionally vague and overbroad in violation of the First and Fourteenth Amendments to the United States Constitution."

I

Within their first assignment of error, appellants present two issues for review. First, appellants argue that R.C. Chapter 3767 is unconstitutional as applied in the present case because the conduct underlying the nuisance action is "inextricably intertwined" with expression protected by the First Amendment and because the sanctions imposed by the trial court are not narrowly tailored to avoid an undue restriction of First Amendment rights. We do not agree.

Appellants' argument is premised upon the theory that the "least restrictive means" test announced by the United States Supreme Court in *United States v. O'Brien* (1968), 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672, applies in the present case. In *O'Brien*, the Supreme Court determined that government regulation of conduct having an expressive element is "sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* at 377, 88 S.Ct. at 1679, 20 L.Ed.2d at 680. Appellants focus on the last prong of this test, contending that the sanctions imposed by the trial court are not narrowly tailored and are "greater than [are] essential" to furthering the state of Ohio's governmental interest in protecting against public nuisances.

Appellants' *O'Brien* analysis is flawed, however, as is clearly demonstrated by the United States Supreme Court's decision in *Arcara v. Cloud Books, Inc.* (1986), 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568. In that case, an adult bookstore was closed after an undercover investigation revealed that masturbation, fondling, fellatio, and solicitation of prostitution occurred on the premises. The Supreme Court rejected the bookstore owners' argument that *O'Brien*

applied, explaining that "least restrictive means" scrutiny applies only to those criminal and civil sanctions "where it was conduct with a significant expressive element that drew the legal remedy in the first place" or "where a statute based on a non-expressive activity has the inevitable effect of singling out those engaged in expressive activity." *Id.* at 706–707, 106 S.Ct. at 3177, 92 L.Ed.2d at 578. The court ultimately determined that the sexual activity in *O'Brien* "manifest[ed] absolutely no element of protected expression" and that the statute at issue failed to "single out bookstores or others engaged in First Amendment protected activities for the imposition of its burden." *Id.* at 705, 106 S.Ct. at 3176, 92 L.Ed.2d at 577.

■ In the present case, neither justification for "least restrictive means" scrutiny exists. Like the sexual activity in *Arcara*, the sexual activity found to occur in the Arcade contains no significant element of expression protected under the First Amendment. "Masturbation is not so inextricably bound up with the display of adult videotapes and movies that the conduct cannot be regulated separately from the protected speech." *State ex rel. Ward v. Lion's Den* (June 3, 1993), Ross App. No. 1874, unreported, at 5, 1993 WL 191016. The Supreme Court of Ohio has also held that sexual activity in an adult bookstore does not involve elements of protected expression. See *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 588 N.E.2d 116. Additionally, R.C. Chapter 3767, Ohio's nuisance legislation, does not have the inevitable effect of singling out expressive activity, as it forbids "lewdness, assignation, or prostitution," as did the statute in *Arcara*. See R.C. 3767.01(C). R.C. Chapter 3767 "prohibits only conduct, not expression." *State ex rel. Miller v. Private Dancer* (1992), 83 Ohio App.3d 27, 32, 613 N.E.2d 1066, 1069. Because the present case does not involve expressive conduct or a statute which effectively singles out expressive activity, the *O'Brien* test does not apply and we need not address the trial court's sanctions in that context.

■ In their second issue presented for review, appellants contend that the trial court's forfeiture order, which directed that all "personal property located at the Interstate Adult Arcade including, but not limited to, all video cassette recorders, all television monitors, all booths, all wiring and any and all other personal property used in the conduct and maintenance of the nuisance" be sold, was unlawful because the state presented no evidence that the personal property was connected with the nuisance action. We do not agree.

R.C. 3767.06(A) authorizes the removal and sale of "all personal property and contents used in conducting or maintaining the nuisance." Upon review of the record, we are convinced that the equipment specifically identified by the trial court was proven to be used in the conduct and maintenance of the nuisance found to be present at the Arcade. Appellants fail to identify any equipment

which was removed from the Arcade for sale which was not used in conducting or maintaining the nuisance. Initially, the court's order encompassed a snack vending machine, a soda vending machine and a pinball machine which had no connection to the sexual activity occurring on the premises. However, the court subsequently allowed the owner of the vending and pinball machines to remove them from the Arcade. Once the vending and pinball machines were exempted from the court's order of sale, it appears that the video equipment and booths constituted the remaining personal property to be sold, as nothing in the record indicates otherwise. Again, the record contains sufficient evidence to justify the sale of that equipment.

Appellants' second issue presented for review is overruled, as is their first assignment of error.

## II

In their second assignment of error, appellants also raise two issues for review. First, appellants contend that the state failed to prove that "lewdness" under R.C. 3767.01(C) existed at the Arcade. We do not agree.

The term "nuisance" is defined in R.C. 3767.01(C). That section states in pertinent part as follows:

"(C) 'Nuisance' means that which is defined and declared by statutes to be such and also means any place in or upon which lewdness, assignation, or prostitution is conducted, permitted, continued, or exists * * *."

In arguing that the state did not establish the existence of "lewdness" at the Arcade, appellants rely on the definition of that term announced in *Rear Door*:

"The common definitions of 'lewd' clearly demonstrate that there are activities of a sexual nature which are beyond the limits of what society deems tolerable. We recognize this proposition is tempered by an established right of privacy which generally provides that what two consenting adults do in private is their own concern. *Paris Adult Theatre I v. Slaton* [ (1973), 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446], *supra.* By necessary implication, R.C. 3767.01 may only be applied to instances of public activity which are unprotected. In *Arcara* and *Paris Adult Theatre I*, the United States Supreme Court held that the right of privacy does not apply to sexual activity in a commercial theatre or bookstore open to the public at large. Since there was evidence of peepholes between booths and patrons leaving doors open, presumably for their own voyeuristic gratification, or for the purpose of enticing a second participant, the right of privacy is equally inapplicable to this case. See *People v. Adult World Bookstore* (1980), 108 Cal.App.3d 404, 166 Cal.Rptr. 519.

"In summary, we conclude that the term 'lewdness' is not void for vagueness. The word describes a public sexual activity that is reprehensible or disgusting in nature." *Rear Door, supra*, 63 Ohio St.3d at 360, 588 N.E.2d at 122.

Appellants essentially argue that the " 'closed door' misbehavior by patrons" in this case does not "constitute 'public [sexual] activity' " because the state presented no evidence of peepholes between booths or of patrons leaving doors open. We agree that the state did not present such evidence, but after examining evidence of the physical structure of the booths in the Arcade, we find that the sexual activity proven to occur therein was public sexual activity.

In the previously quoted passage from *Rear Door*, the court utilizes privacy principles to conclude that "lewdness" includes only instances of *public* activity. The inverse of the court's rationale is equally correct. That is, "lewd" public sexual activity must occur in a place where no right of privacy exists.

It is evident from photographs and a videotape of the Arcade that the individual booths resemble public restroom stalls. Neither the partitions separating the booths nor the doors to the booths reach the floor. Although the dimension of the open space is not known, it is clear that the space is sufficient for a passerby to at least in part observe the activities of a patron or patrons inside an individual booth. Because the partitions between the booths do not reach the floor, a patron in one booth could conceivably at least in part observe the activities of patrons in adjoining booths. Also, the booths are not constructed of metal as in most public restrooms. They are instead constructed of thin sheets of pressboard.

Because the booths in the Arcade and public restroom stalls are structurally similar and because both are partitioned spaces within a place accessible to the public, we find that the cases analyzing the right of privacy in public restroom facilities are applicable.[1] We are particularly persuaded by two court of appeals decisions. First, in *State v. Million* (1989), 63 Ohio App.3d 349, 578 N.E.2d 869, the court addressed the issue in the context of a voyeurism conviction. The court reversed Million's conviction, concluding that "an occupant of a public restroom has no reasonable expectation of privacy concerning what can be seen below the level of the stall partition." *Id.* at 351, 578 N.E.2d at 871.

---

1. Appellants argue that the Arcade itself is a private club because a membership card must be produced to enter the facility. However, the evidence presented in the lower court indicates that the only requirements for "membership" at the Arcade are that the patron pay a $1 fee, sign a form, and be eighteen years of age. At least two officers testified that upon entering the Arcade, employees simply asked them to sign the "membership application." The officers were not required to read the application. These facts indicate that the Arcade is accessible to any adult paying the $1 entrance fee. Therefore, we find that the Arcade is truly a public place.

Second, in *State v. Tanner* (1988), 42 Ohio App.3d 196, 537 N.E.2d 702, the court addressed the issue in the context of the Fourth Amendment's protection against unreasonable searches and seizures. The *Tanner* court identified two elements that must exist to support the conclusion that a person has a reasonable expectation of privacy. "First, the individual 'must have a subjective expectation of privacy; and, second, * * * [the] expectation must, as an objective matter, be one that society is prepared to recognize as reasonable.'" *Tanner* at 197, 537 N.E.2d at 703, quoting *United States v. Brown* (C.A.6, 1980), 635 F.2d 1207, 1211. The court in *Tanner* ultimately concluded that an individual cannot reasonably expect privacy when using a public restroom stall for a purpose other than that for which the stall was intended. Accordingly, no privacy could reasonably be expected with regard to sharing the stall with another individual.

Applying these privacy principles in the present case, we are convinced that patrons of the Arcade have no reasonable expectation of privacy while inside one of the Arcade's booths if they utilize the booth for sexual activity. *Million* supports this conclusion as to what can be observed below the doors and partitions of the booths. Employing their senses and experience in combination with what can be observed beneath the booth doors and partitions, most adults could ascertain whether sexual activity was taking place inside one of the booths. The present case also fails to pass muster under the second prong of the *Tanner* test. This court finds that society is not prepared to tolerate an expectation of privacy legitimizing sexual activity in a partially enclosed booth within an arcade accessible to the public, especially in light of the health concerns involved.

To summarize, we conclude that patrons of the Arcade who utilized the booths in the facility for sexual activity have no legitimate expectation of privacy while inside the booths. Because the sexual activity in the present case occurred within areas where no right of privacy existed, the activity was "public" for purposes of the *Rear Door* definition of "lewdness." The state presented sufficient evidence that patrons engaged in sexual activity while inside the booths. Therefore, the state provided sufficient proof that "lewdness," or "public sexual activity that is reprehensible or disgusting in nature," existed at the Arcade. Accordingly, we reject the first argument set forth under appellants' second assignment of error.

■ In their second issue presented for review, appellants argue that there was an insufficient showing of culpability under R.C. Chapter 3767 to justify sanctions in the present case. Appellants contend that they, the owners and employees of the Arcade, cannot be held responsible for the acts of their patrons. We do not agree.

R.C. 3767.02 establishes the standard for culpability in a nuisance action:

"Any person, who uses, occupies, establishes, or conducts a nuisance, or aids or abets therein, and the owner, agent, or lessee of any interest in any such nuisance together with the persons employed in or in control of any such nuisance by any such owner, agent, or lessee is guilty of maintaining a nuisance * * *."

Based on the facts of the present case, the standard of culpability herein is any person who aids or abets in the conduct of a nuisance is guilty of maintaining a nuisance.

In *Rear Door, supra,* the court applied this standard of culpability. That court found the following evidence established that the owners and operators of the Rear Door Bookstore aided and abetted a nuisance therein: (1) customers had to purchase tokens from an employee to operate the movie projectors (so the employee was aware that the customer was about to use the arcade); (2) semen stains found on the booths were visible to the naked eye; and (3) tissues and wastebaskets were provided in each booth, which presumably had to be restocked and emptied, thereby alerting employees to the presence of debris in the booths.

The record in the present case contains similar evidence that appellants aided and abetted the sexual conduct of the Arcade's patrons. All patrons of the Arcade had to check in with an employee at the entrance of the facility. Several witnesses testified that semen stains were visible in the booths without the aid of a blacklight. Also, the Arcade employed "cleaners" instructed to clean the booths and to collect used paper towels and tissues. One Arcade employee even testified that outside trash receptacles were kept locked "to keep the sheriff's department out" and that the "cleaners" were told to rid the booths of semen to frustrate a possible police investigation. That employee further testified that her supervisors and the operators of the Arcade instructed her to prevent sexual activity from taking place outside the booths by requiring patrons to "take it to a booth or leave." We conclude that this evidence more than adequately establishes that appellants aided or abetted a nuisance, the sexual conduct of their patrons. Thus, appellants' culpability argument fails. Because we have rejected both arguments comprising appellants' second assignment of error, that assignment is overruled.

### III

In their third assignment of error, appellants contend that the trial court erred in failing to suppress the evidence seized from the Arcade by the undercover officers as that evidence was confiscated without a warrant. We do not agree.

This issue has been addressed by the court in *Rear Door, supra.* In that case, the court found that the seizure of tissues and condoms from the video booths in the Rear Door Bookstore was lawful because the bookstore owners and operators

had no expectation of privacy in the area of the bookstore where the evidence was gathered. The court also determined that the search was lawful under the plain view doctrine. The court's analysis in *Rear Door* is directly applicable in the present case:

"The Fourth Amendment applies to searches and seizures. ' * * * A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. * * *' *United States v. Jacobsen* (1984), 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 94. In the present case, the undercover deputies entered a part of appellants' place of business that was open to any adult member of the public. In that situation, there can be no expectation of privacy on appellants' part and, therefore, a search in the constitutional sense did not occur. *Maryland v. Macon* (1985), 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370.

"This same conclusion can be reached by applying the plain-view doctrine. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. Since no First Amendment rights attached to the video booth activity, the plain-view doctrine was free of the constraints the Supreme Court has associated with freedom of speech and searches and seizures. *Heller v. New York* (1973), 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745. The evidence found was within the plain view of anyone who entered the area of the bookstore. The bookstore was a place open to the public and, therefore, the deputies made their observations from a place where they were legally permitted to be." *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals, supra,* 63 Ohio St.3d at 364, 588 N.E.2d at 125.

In the present case, the items collected by the officers, used tissues and paper towels, a used condom, and scrapings from the booths, were similar to the items collected by detectives without a warrant in *Rear Door.* As the court stated in *Rear Door,* these items are debris collected from a place open to any adult member of the public and in which appellants have no reasonable expectation of privacy. The Fourth Amendment does not protect against seizure of such items and the officers lawfully confiscated them without a warrant. See *State ex rel. Ward v. Lion's Den, supra.*

The plain view doctrine is equally applicable herein as, like the evidence in *Rear Door,* the items seized from the Arcade were within plain view of those present in the Arcade. Also, as in *Rear Door,* the officers in the present case made their observations while in a place open to the public. See footnote 1, *supra.* Therefore, the officers' seizure of the items from the Arcade was also lawful under the plain-view doctrine.

■ Appellants, however, contend that the trial court erred in denying their motion to suppress on the basis that the exclusionary rule does not apply in civil

cases. Appellants' position is that the exclusionary rule is "fully applicable to the quasi-criminal proceedings prescribed by Chapter 3767."

Once again, we find guidance in the *Rear Door* decision. The court in *Rear Door* determined that the fact that the case was a civil action added "further credence" to the overruling of the motion to suppress in that case. The court stated, "[g]enerally, the exclusionary rule has not been applied in civil cases; we see no reason to expand the exclusionary rule to the facts of this case." *Rear Door, supra,* 63 Ohio St.3d at 364, 588 N.E.2d at 125. Because the facts in the present case are so similar to the facts in *Rear Door,* we also see no reason to expand the exclusionary rule herein. Appellants' third assignment of error is overruled.

## IV

In their fourth assignment of error, appellants argue that the trial court was powerless to close the Arcade for all purposes at the temporary injunction stage. Appellants propose that a "carefully tailored injunction" was required that simply ordered the conduct at issue abated. We do not agree.

R.C. 3767.04(B)(3), as it existed during the trial court proceedings in the present case, authorizes a court faced with an application for a temporary injunction in a nuisance action to "issue an order closing the place against its use for any purpose of lewdness, assignation, or prostitution until final decision is rendered on the application for a permanent injunction."

As outlined above, the Arcade contained only video booths and a few game and vending machines. There is no indication that patrons visited the Arcade solely to use the game and vending machines. In addition, upon review of the record, we find sufficient evidence that the operation of the arcade area played a significant part in the lewd conduct. We also fail to understand how an order requiring the lewd conduct in the Arcade to cease yet allowing the Arcade to operate would "assure the abatement of the nuisance," as appellants contend, especially in light of the trial court's finding that appellants had failed to abate the nuisance as of the temporary injunction hearing. The closure of the Arcade for all purposes at the temporary injunction phase was a proper application of R.C. 3767.04(B)(3). Accordingly, appellants' fourth assignment of error is overruled.

## V

In their fifth and final assignment of error, appellants allege "that the definitional and liability provisions of R.C. Chapter 3767 are unconstitutionally vague and overbroad." Appellants admit, however, that the Supreme Court of

Ohio upheld the constitutionality of R.C. Chapter 3767 in *Rear Door, supra.* Based on that decision, we are obligated to reject appellants' constitutional challenges to R.C. Chapter 3767. See, also, *State ex rel. Miller v. Private Dancer, supra,* 83 Ohio App.3d 27, 613 N.E.2d 1066. Appellants' final assignment of error is overruled.

*Judgment affirmed.*

KOEHLER, P.J., and WALSH, J., concur.