This appeal arises from the attempts of appellant, Interstate Independent Corporation ("Interstate"), to get zoning approval to operate an "adult video arcade" or, alternatively, a "retail clothing and gift boutique" on its property located in the Village of Octa ("Octa"). Interstate complains that the administrative decisions denying such approval were arbitrary and capricious. Interstate also argues that the administrative authorities applied the Octa zoning ordinance unconstitutionally, and that the Fayette County Court of Common Pleas erred in ruling on the merits of the administrative appeal without a complete record.
 I. BACKGROUND
Between January and March of 1992, undercover officers with the Fayette County Sheriff's Department and the South Central Ohio Task Force investigated the adult video arcade Interstate operated at 9017 West Lancaster Road in Octa. The arcade contained thirty-two viewing booths, each equipped with a bench, a menu of sexually explicit videos, and a coin-operated video monitor. During the investigation, officers collected samples of semen and pubic hair from various viewing booths. Officers also observed what appeared to be dry semen stains on the walls, floors, and video monitors. Officers described the presence of employees who swept and mopped the floors and collected used paper towels and tissues from the video booths and adjoining hallway.
Based upon the evidence of lewd conduct occurring on the premises, the Fayette County Court of Common Pleas determined that Interstate's adult video arcade was a public nuisance. On July 15, 1992, the common pleas court issued a permanent injunction, ordered Interstate's business closed for one year, and ordered all property used in conducting the nuisance sold. This court subsequently affirmed that decision. Roszmann v. Lions Den (1993), 89 Ohio App.3d 775, jurisdictional motion overruled,68 Ohio St.3d 1420.
On November 13, 1992, Octa adopted a comprehensive zoning plan. Octa's zoning ordinance established five districts: agricultural, residential, highway service, commercial, and industrial. The agricultural, residential, and highway service districts are currently in use. Interstate's property, which is located just west of U.S. I-75, is within a highway service district. The Octa zoning ordinance defines a permitted use in the highway service district as "any retail business, service establishment or office serving primarily the highway traveler, such as hotels, motels, service stations, gift shops or restaurants." Octa Zoning Ordinance Section 10.11. The zoning ordinance, however, does not purport to regulate adult entertainment.
On August 8, 1993, just over one year after the common pleas court ordered the arcade closed, Interstate reopened its adult video arcade.[1] On August 20, 1993, Octa filed a complaint to enjoin Interstate for violating its zoning ordinance, and the Fayette County Common Pleas Court issued a preliminary injunction. On September 13, 1993, Interstate sent the Fayette County Zoning Inspector, the official responsible for enforcing Octa's zoning ordinance, a letter requesting a zoning permit. The zoning inspector, however, did not immediately act on that letter because he did not believe that Interstate filed the request on a necessary form.
On March 22, 1994, the common pleas court permanently enjoined Interstate from violating Octa's zoning ordinance. Interstate appealed that decision, complaining that Octa's zoning ordinance was unconstitutional on its face. Interstate also challenged the zoning inspector's refusal to act upon its letter requesting a zoning permit. This court concluded that the zoning resolution was constitutional, but ordered the zoning inspector to act upon Interstate's request for a zoning permit. Incorporated Village of Octa v. Interstate Adult Arcade (Oct. 17, 1994), Fayette App. No. CA94-04-002, unreported, jurisdictional motion overruled and discretionary appeal not allowed, 71 Ohio St.3d 1491.
While Interstate's permanent injunction appeal was pending in this court, Interstate filed additional requests for zoning approval with the zoning inspector. The zoning inspector timely considered each request, but consistently denied Interstate permission to use its property as either an adult video arcade or as a retail clothing and gift boutique.[2] The zoning inspector did approve an Interstate application to operate a restaurant on the property.
Interstate appealed the zoning inspector's adverse determinations to the Fayette County Board of Zoning Appeals (the "Board"). Interstate also asked the Board to independently consider its applications for conditional use certificates to operate either an adult video arcade or a retail clothing and gift boutique. The Board held a hearing on August 3, 1994. It subsequently affirmed the zoning inspector's conclusion that Interstate's proposed uses were not "primary permitted uses" within Octa's highway service district. The Board also denied Interstate's requests for conditional use certificates. Interstate appealed the Board's decision to the Fayette County Court of Common Pleas, Case Number 940284CVH.
As noted above, on October 17, 1994, this court ordered the zoning inspector to act on Interstate's September 13, 1993, letter requesting a zoning permit. This court was unaware that the zoning inspector and the Board had timely considered Interstate's subsequent requests for zoning approval. On October 24, 1994, within seven days of this court's decision, the zoning inspector considered Interstate's letter seeking zoning approval, but again refused to issue a zoning permit. After a hearing on December 6, 1994, the Board again affirmed the zoning inspector's decision. Interstate also appealed that decision to the common pleas court in case number 950013CVH.
The common pleas court consolidated Interstate's two administrative appeals. On October 11, 1996, the court affirmed the Board. The court concluded that the Board's decisions were reasonable and supported by substantial and reliable evidence. Interstate timely appealed that decision to this court.
 II. DISCUSSION A. First Assignment of Error
Under its first of three assignments of error, Interstate complains that the Board's decisions were contrary to law and unsupported by a preponderance of substantial, reliable, and probative evidence. Interstate sets forth four separate issues for review.
Interstate first argues that it is entitled to a conditional use permit to operate its adult video arcade as a "grandfathered" or prior nonconforming use. This court disagrees.
R.C. 303.19 provides for the continuation, under certain circumstances, of nonconforming uses in existence before the adoption of zoning:
 The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use does not conform with the provisions of such resolution or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, any future use of land shall be in conformity with sections 303.01 to 303.25, inclusive, of the Revised Code.
(Emphasis added.)[3]
Interstate argues that its adult video arcade is a valid nonconforming use since it began operating the arcade before Octa adopted its zoning ordinance and never voluntarily ceased operations for more than two years. Appellee, on the other hand, argues that the adult video arcade did not exist as a lawful use when Octa adopted its zoning ordinance.
"R.C. 303.19 addresses two separate and distinct issues: (1) the existence of a lawful use at the time a change in zoning occurs, and (2) discontinuation of a nonconforming use which occurs after a change in zoning." Booghier v. Wolfe (1990),67 Ohio App.3d 467, 470, jurisdictional motion overruled, 55 Ohio St.3d 708
(emphasis in original). The Booghier case involved a complaint for an injunction against an "adult entertainment establishment" in Crystal Lakes, Ohio. In December 1985, that establishment was closed as a nuisance for one year based upon prostitution on the premises. In May 1987, zoning jurisdiction in Crystal Lakes was incorporated with Clark County; the parties agreed that the county's zoning regulations prohibited adult entertainment unless that use existed as a valid nonconforming use. In late October 1987, after the zoning change but shortly before the two-year anniversary of the closing, the establishment attempted to reopen. The common pleas court, however, found that the owner "did not have a valid non-conforming use at the time of the incorporation of Clark County zoning jurisdiction."
On appeal, the Second District Court of Appeals rejected the appellant's argument that its business was a grandfathered use:
 Under R.C. 303.19, the use that is "grandfathered" upon a change in zoning is only that use that was `existing and lawful' as of the date the zoning was changed. Here, the trial court found, and we think properly so, that use of the premises as an adult entertainment business did not exist when the zoning was changed, or that such use, as did exist or as was contemplated, was not lawful.
Id. at 473, (citations omitted, emphasis in original). There were two separate concurring opinions in Booghier. Both concurring opinions agreed that the establishment was not entitled to nonconforming use status because the prior use was unlawful. Id. at 474. Both concurring opinions cited Matthews v. Pernell (1990), 64 Ohio App.3d 707 (massage parlor shut down as nuisance for prostitution did not qualify as prior nonconforming use).
The reasoning in Booghier is persuasive. This court, however, concludes that the issue is not whether Interstate's adult video arcade was "in existence" when Octa adopted its zoning ordinance. Instead, the question is whether Interstate's adult video arcade existed as a "lawful" use at that time. See Booghier at 474 (Fain, J., concurring).
The operation of an adult video arcade cannot be considered an unlawful use of property per se. See, e.g., Joseph Burstyn, Inc. v. Wilson (1952), 343 U.S. 495, 72 S.Ct. 777 (First Amendment protects motion pictures as fully as other mediums of expression). This court, however, has previously concluded that Interstate operated its adult video arcade unlawfully. Roszmann,89 Ohio App.3d at 784. See, also, State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals (1992), 63 Ohio St.3d 354,362 (sexual activity resulting in sanctions did not involve First Amendment freedoms of speech or activity). In considering whether a valid nonconforming use exists, a prior "determination of illegality is binding on appellants and their business activity in any substantially similar form." Matthews,64 Ohio App.3d at 713. Moreover, this court need not ignore the unlawful nature of Interstate's operations simply because other aspects of its business involved "expressive material." See Arcara v. Cloud Books, Inc. (1986), 478 U.S. 697, 705, 106 S.Ct. 3172, 3176-77
("First Amendment values may not be invoked by merely linking the words `sex' and `books'").
This court concludes that Interstate's adult video arcade did not exist as a lawful use when the village adopted its zoning ordinance. Therefore, Interstate's adult video arcade was not a valid nonconforming use, and it was not entitled to a conditional use permit under R.C. 303.19.
Interstate next argues that an adult video arcade and a retail clothing and gift boutique are both "primary permitted uses" in Octa's highway service district. Section 10.11 of Octa's zoning ordinance defines a permitted use in the highway service district as "any retail business, service establishment or office serving primarily the highway traveler, such as hotels, motels, service stations, gift shops or restaurants." (Emphasis added). Obviously, this definition does not specifically list either an "adult video arcade" or a "retail clothing and gift boutique." The issue, therefore, is whether Interstate's proposed uses are sufficiently similar to the examples in the definition to constitute primary permitted uses.
Octa's zoning ordinance authorizes the Fayette County zoning authorities to enforce its provisions. Octa Zoning Ordinance Section 14.1. To properly enforce the ordinance, the zoning authorities must necessarily interpret its provisions. In determining if uses not specifically mentioned in a zoning ordinance are similar to uses expressly listed, the zoning authorities must act in the exercise of their police power, and their determinations must be reasonable. See Rotellini v. West Carrollton Bd. of Zoning Appeals (1989), 64 Ohio App.3d 17, 24.
On review, however, the common pleas court must presume that an administrative interpretation or determination is reasonable and valid. Id. at 20. The party opposing that determination has the burden of demonstrating any such determination is invalid. Id. Thus, the administrative determination here that neither an adult video arcade nor a clothing and gift boutique is a primary permitted use is presumptively reasonable, and Interstate had the burden to rebut that presumption.
Several individuals at the Board hearings expressed concern that neither an adult video arcade nor a retail clothing and gift boutique would primarily serve the highway traveler. See Octa Zoning Ordinance Section 10.11. Significantly, there was some evidence at the August 3 hearing that the zoning inspector had previously and consistently held that retail clothing stores in areas adjacent to Octa were also not primary permitted uses in a highway service district. Interstate, however, never introduced any evidence that its proposed uses were directed toward the service of the highway traveler. See id. Interstate also did not point to any instances where the zoning authorities interpreted the definition of permitted uses in the highway service district inconsistently. Under these circumstances, Interstate did not carry its burden of showing that the Board's interpretation of the zoning ordinance was unreasonable.
Interstate next argues that no substantial evidence supported the Board's denial of its conditional use applications. This court disagrees. A decision to deny an application for a conditional use permit is administrative in nature. Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals (1993), 66 Ohio St.3d 452, 455-56. In reviewing that decision, the common pleas court must weigh the evidence in the record to determine whether there is a preponderance of reliable, probative, and substantial evidence in support. Id. The common pleas court, however, should not substitute its judgment for that of the board. Id.
The orderly development of an area is a legitimate goal of zoning regulations, and the burden of land use restrictions should be weighed against the proposed long-range development plan for the area as a whole. Miller Chevrolet, Inc. v. Willoughby Hills (1974), 38 Ohio St.2d 298, 303. In ruling on Interstate's conditional use applications, the Board was required to consider the nature and condition of all adjacent uses and structures. Octa Zoning Ordinance Section 15.31. Octa's ordinance also provides the Board with authority to impose additional requirements and conditions on conditional uses it considers. Id.
Laurence Dumford, a former county commissioner, testified at the August 3 hearing about the economic importance of the highway corridor to Octa. Considering the significant economic impact of the highway service district to the entire community, Dumford stressed the need to carefully consider the use of land abutting the highway. Many individuals at both hearings before the Board complained that Interstate's business had greatly deterred economic development in the immediate area. Interstate, however, never challenged or rebutted that evidence. Significantly, although board members consistently asked Interstate's representative for more detailed information about the proposed uses for its property, no such information was forthcoming.
This court concludes that a preponderance of reliable, probative, and substantial evidence supports the Board's decisions not to grant Interstate's applications for conditional use permits. Moreover, without Interstate's cooperation in providing information about its proposed uses for its property, the Board could not properly consider the requests for conditional use permits.
In its last issue under the first assignment of error, Interstate complains it is entitled to a zoning certificate under Section 14.41 of Octa's zoning ordinance. Section 14.41 provides in part that the zoning inspector must act upon all "authorized applications" within thirty days of filing, and must either issue a zoning certificate within that time or notify the applicant of the reasons for a refusal. Section 14.41 also provides that failure to notify the applicant of a refusal of an application within the thirty-day period entitles the applicant to a zoning certificate.
As noted above, Interstate sent the zoning inspector a letter in September 1993 asking for zoning approval. The zoning inspector, however, did not immediately act upon Interstate's request because it was not filed on an official form. This court later determined that Interstate's letter satisfied all necessary requirements to serve as an "authorized application" for a zoning certificate. Octa at 9. This court therefore ordered the zoning inspector to act upon the request. Id. at 13.
Considering this court's previous ruling in Octa, this court concludes that the zoning inspector had thirty days from the date of this court's order to consider Interstate's request for zoning approval. The zoning inspector complied with this court's order within seven days. If this court had concluded that the zoning inspector had violated section 14.41, this court would not have remanded the issue. Interstate is not entitled to a zoning certificate under Octa Zoning Ordinance Section 14.41.
To summarize the first assignment of error, Interstate's adult video arcade did not exist as a lawful use when Octa adopted its zoning ordinance, and the business was not, therefore, a "grandfathered" or valid nonconforming use. Additionally, Interstate did not rebut the administrative determination that neither an adult video arcade nor a retail clothing and gift boutique are primary permitted uses within Octa's highway service district. Interstate also failed to show that the Board acted unreasonably in denying its applications for conditional use permits. Finally, Interstate was not entitled to a zoning permit for the zoning inspector's failure to immediately act on its September 13 letter requesting zoning approval. Interstate's first assignment of error is overruled.
 B. Second Assignment of Error
Under its second assignment of error, Interstate complains that the administrative authorities applied Octa's zoning ordinance unconstitutionally. Interstate specifically argues that the zoning inspector and the Board applied the zoning ordinance as an unconstitutional prior restraint on "protected expression." Interstate also argues that application of the ordinance completely denies it the opportunity to operate its "speech-related" business in Octa.
Interstate previously challenged the facial constitutionality of Octa's zoning ordinance. This court concluded, however, that the ordinance was constitutional. Octa at 4.[4] This court held that the ordinance contains neutral criteria with which to decide if an applicant may receive a zoning permit, and ensures a solid foundation for judicial review. Id. at 5, citing Lakewood. This court also rejected Interstate's argument that the ordinance did not provide for prompt judicial review. Id. at 6.
Interstate raises nearly identical constitutional arguments in this appeal, but instead of attacking the ordinance on its face, Interstate now challenges the ordinance as applied. Contrary to appellee's assertion, the doctrine of collateral estoppel does not bar Interstate's present constitutional challenge. Officials charged with interpreting and enforcing a valid zoning regulation may nevertheless attempt to apply that regulation unlawfully. See Lakewood v. Plain Dealer Pub. Co. (1988), 486 U.S. 750, 760-61,108 S.Ct. 2138, 2146 (although laws of general application are "too blunt a censorship instrument to warrant judicial intervention before an allegation of actual misuse," if the charge is made, courts may compare a "speech-related decision" to decisions unrelated to speech).
There is no question that Octa has the authority to zone and control land use within its boundaries in accordance with its zoning ordinance. See Gibson v. Oberlin (1960), 171 Ohio St. 1,5. Additionally, a law requiring permits for specified activities is not unconstitutional because it vests discretion in administrative officials to grant or deny the permit, and the Constitution does not require courts to assume that such officials will illegally exercise their discretion. See Douglas v. Noble (1923), 261 U.S. 165, 170, 43 S.Ct. 303, 305. Moreover, the Supreme Court has held that the enforcement of an ordinance of general application does not necessarily implicate the First Amendment, although enforcement may have "incidental consequences" on First Amendment protected activities. See Arcara at 705-706, 106 S.Ct. at 3177. Although a law or policy allowing communication in a certain manner for some activities but not for others raises the specter of content and viewpoint censorship, "laws of general application that are not aimed at conduct commonly associated with expression and do not permit licensing determinations to be made on the basis of ongoing expression or the words about to be spoken, carry with them little danger of censorship." Lakewood at 760-63, 108 S.Ct. at 2146-47.
In light of the foregoing principles, it is incumbent upon the party challenging the application of a generally applicable zoning ordinance to come forward with some evidence that a particular administrative decision is based upon an unlawful purpose, or that any incidental consequences on First Amendment related activities are unreasonable. Octa's zoning ordinance is a law of general application. Unlike many zoning ordinances in force throughout the nation, the ordinance here does not purport to regulate adult businesses, and does not regulate any form of conduct, speech, or expression. Compare Renton v. Playtime Theatres, Inc. (1986), 475 U.S. 41, 106 S.Ct. 925 (city may regulate location of adult businesses within a comprehensive zoning scheme as long as the regulations are designed to serve a substantial governmental interest and do not unreasonably limit alternate avenues of communication). See, also, Young v. American Mini Theatres, Inc. (1976), 427 U.S. 50,96 S.Ct. 2440.[5] Thus, Interstate had a burden of establishing that the administrative authorities applied the zoning ordinance unreasonably or as an attempt to control or limit Interstate's First Amendment rights.
There is no indication here that Octa adopted its comprehensive zoning scheme to restrain Interstate's First Amendment rights. Moreover, the Board did not expressly base its administrative decisions here upon the content of Interstate's expressive activities.[6] Instead, the Board premised its decisions on Interstate's failure to demonstrate that its proposed uses were directed primarily toward the highway traveler. The Board was also concerned with Interstate's refusal to provide it with any meaningful information about its proposed uses.
Each of Interstate's current constitutional arguments, however, is premised on its presumption that the Board applied the zoning resolution to prohibit or restrain its First Amendment protected right of expression, or that any incidental consequences on Interstate's first amendment rights were unreasonable. Interstate, however, is not entitled to a presumption that the administrative authorities acted arbitrarily or unlawfully. See Douglas at 170, 43 S.Ct. at 305. Interstate is also not entitled to a presumption that any incidental consequences on its ability to operate its "expressive activities" are unreasonable. Instead, Interstate had the responsibility to produce some evidence on those issues. For example, Interstate could have compared the Board's actions here with Board decisions in other cases involving "non-expressive" businesses. Interstate, however, made no such attempt to show that the Board's decisions were arbitrary, or motivated by an intent to prohibit presumptively protected speech.
Interstate also complains that the zoning ordinance is unconstitutional as applied because it alleges that Octa's zoning scheme precludes Interstate from operating its business in Octa. See Renton at 54, 106 U.S. at 932 (the First Amendment does not prohibit content neutral regulation of adult theater, but city may not deny that business a reasonable opportunity to operate within the city). Interstate points out that there were only three active zoning districts in use when it applied for its zoning permits. Interstate assumes that the administrative authorities would not have approved its proposed uses in Octa's agricultural or residential districts.
The basic issue here is whether the administrative authorities have applied the zoning ordinance to prohibit an entire category of presumptively protected expression in Octa. Interstate, however, has again failed to make its case. Interstate has never tried to petition for a zoning change to one of the categories not presently in use in Octa. Moreover, Interstate introduced no evidence that the administrative authorities were likely to prohibit it from distributing its expressive material in another district. It is also not clear that the Board would have denied Interstate's applications for conditional use permits if Interstate had cooperated with the Board by providing it with information about its proposed uses. This court concludes that Interstate has not established that the administrative authorities have applied Octa's zoning ordinance to deny Interstate any reasonable opportunity to open and operate its adult business within Octa. See Renton.
To summarize this second assignment of error, Interstate has failed to establish that the administrative authorities applied Octa's zoning ordinance unconstitutionally. Interstate produced no evidence that the Board applied the zoning ordinance to impose a prior restraint on its right to free speech. Moreover, Interstate did not establish that the zoning ordinance unreasonably precludes it from participating in free expression in Octa. Interstate's second assignment of error is overruled.
 C. Third Assignment of Error
Interstate contends under its third assignment of error that the common pleas court erred in ruling on the merits of its administrative appeals. Interstate complains that the Board did not file a complete record of the administrative proceedings with the common pleas court. It argues that the common pleas court erred in affirming the Board's decision without a hearing, without making specific conclusions of law, and without citation to authority.
The record contains detailed minutes of the two hearings before the Board. Appellee also filed a verbatim transcript of the August 3, 1994, hearing.[7] On March 23, 1995, Interstate filed a motion to show cause why its appeal should not be granted based upon appellee's alleged failure to provide the common pleas court with a complete record of the proceedings. Interstate, however, made no attempt to describe the deficiencies it perceived in the record. Interstate also made no attempt to introduce additional evidence to the common pleas court under R.C. 2506.03.
R.C. 2506.02 provides, in part, that the officer or body from which an administrative appeal is taken shall prepare and file with the common pleas court "a complete transcript of all the original papers, testimony, and evidence offered, heard, and taken into consideration in issuing the final order, adjudication, or decision appealed from" within forty days after filing the notice of appeal. R.C. 2506.03(A) provides, in part, that the administrative appeal in the common pleas court will be confined to the transcript as filed pursuant to R.C. 2506.02
unless one of five circumstances applies. For example, one such circumstance occurs when the transcript does not contain a report of all evidence admitted or proffered by the appellant. R.C.2506.03(A)(1). Another circumstance occurs if the administrative authority fails to file conclusions of fact supporting the final decision appealed from. R.C. 2506.03(A)(5). If any one of the five circumstances apply, the common pleas court may consider "additional evidence as may be introduced by any party." R.C.2506.03(A).
Although Interstate complained that the record was incomplete, Interstate made no attempt to identify the deficiencies it perceived in the record. More importantly, Interstate made no attempt to introduce additional evidence to the trial court pursuant to R.C. 2506.03. If Interstate was dissatisfied with the state of the record before the common pleas court, it should have taken steps to supplement the record. See R.C. 2506.03. Moreover, the minutes of both administrative hearings and the verbatim transcript of the August 3, 1994, hearing indicate that Interstate made no attempt to introduce any evidence at the administrative hearings before the Board. Under these circumstances, the trial court did not err in ruling on the merits of Interstate's administrative appeal. Interstate's third assignment of error is overruled.
Judgment affirmed.
KOEHLER and WALSH, JJ., concur.
[1] Interstate apparently purchased most or all of the property that the court had ordered sold at auction.
[2] On April 13, 1995, Interstate applied for a zoning certificate to use its property as an adult video arcade. The zoning inspector denied that application on May 3. On May 12, Interstate applied for a conditional use permit to use its property as a clothing and gift boutique. The zoning inspector denied that application on June 6, 1994. On June 22, 1994, Interstate applied for a conditional use permit to use its property as an adult video arcade and as a retail clothing and gift store. The zoning inspector denied that application as well.
[3] Section 6.032 of Octa's zoning ordinance provides that "[n]o building, structure or premises of a nonconforming use which has ceased for two (2) years or more shall again be put to a conforming use."
[4] This court noted that the zoning ordinance contains specific criteria for determining permissible uses in each of the five designated districts, and that the ordinance also contains specific criteria for the size, shape, capacity, location and other specifications as to buildings in Octa. Octa at 6. This court concluded that the requisite criteria are clearly established in the ordinance and are content-neutral. Id.
[5] As far as businesses purveying sexually explicit materials are concerned, zoning ordinances designed to combat the undesirable secondary effects associated with those businesses must be reviewed under the standards applicable to "content-neutral" time, place, and manner regulations. The appropriate inquiry in such cases is whether the ordinance at issue is designed to serve a substantial government interest and allows for reasonable alternative avenues of communication. Renton at 50,106 S.Ct. at 930.
[6] Interstate presented no evidence that its proposed use of its property for a retail clothing and gift boutique would involve expressive material presumptively protected by the First Amendment.
[7] Although that transcript was timely filed on January 25, 1995, the Fayette County Clerk of Courts initially misfiled that transcript. The clerk did not correct that mistake until December 9, 1996, after the common pleas court affirmed the Board's decisions. The minutes of the hearing are very detailed, however, and accurately reflect the verbatim transcript.