VIZZARI et al., Appellees and Cross–Appellants,

v.

COMMUNITY HOSPITAL et al., Appellants and Cross–Appellees.

[Cite as *Vizzari v. Community Hosp.* (2001), 141 Ohio App.3d 494.]

Court of Appeals of Ohio,
Second District, Clark County.

Nos. 2000CA19 and 2000CA37.

Decided Feb. 16, 2001.

*Michael P. McNamee* and *Cynthia P. McNamee,* for appellees and cross-appellants.

*James F. Peifer* and *Quinton R. Dressel,* for appellants and cross-appellees Community Hospital of Springfield and Clark County, Ohio.

*Robin B. DeBell,* for appellant and cross-appellee city of Springfield, Ohio.

FREDERICK N. YOUNG, Judge.

The Community Hospital of Springfield in Clark County, Ohio, et al. ("the hospital") is appealing the decision of the trial court, after a bench trial, finding that the hospital's proposed "Healthplex" development on land next to the Vizzaris' residential land to be a violation of the city of Springfield's Zoning Ordinance and permanently enjoining the hospital from constructing the planned Healthplex on the real property in question.

Luigi and Rosena Ann Vizzari are cross-appealing, citing certain alleged errors in the trial court's decision in the event they lose on appeal, and, in addition, citing as error the decision of the trial court to deny them reimbursement for their attorney fees. The city of Springfield filed a brief in support of the trial court's decision to deny the Vizzaris attorney fees.

We will deal with this appeal in two sections, first, the zoning issue and second, the attorney–fees issue.

I

The essential facts and the trial court's rationale for its decision are succinctly but thoroughly set forth in its judgment entry filed February 10, 2000, as follows:

"This cause was regularly assigned for trial before the Court, sitting without a jury, commencing on January 12, 2000, and concluding on January 13, 2000. The parties submitted an agreed statement of facts and a number of joint Exhibits, all of which were accepted by the Court without further testimony to establish the facts or authenticate the Exhibits.

## "FINDINGS OF FACT

"The Court finds that the Plaintiffs have established by clear and convincing evidence the following facts.

"I.   The Plaintiffs are property owners in and the developers of a plat, known as Olympic Hills, located in the City of Springfield, Ohio.

"II.   The Defendant, The Community Hospital of Springfield and Clark County, Ohio, is an Ohio corporation organized not for profit.

"III.   The Defendant, City of Springfield, Ohio, is a municipal corporation.

"IV.   The Defendant, City, has adopted a zoning code, parts of which are set for the [sic] in the Agreed Statement of facts and are therefore not repeated here.

"V.   The Defendant, Hospital acquired title to 2 contiguous parcels of real property, Parcel A, consisting of 3.887 acres, and Parcel B, consisting of 19.998 acres, contiguous to Olympic Hills.

"VI.   At the time of acquisition and to the present time, Parcel A is zoned R–3 Apartment Residence, and Parcel B is zoned R–1B Single Family Residence.

"VII.   On two separate occasions, prior to 1999, the Defendant, Hospital, started proceedings to re-zone both parcels to a commercial zoning classification, but abandoned both efforts.

"VIII. Ultimately the Defendant, Hospital, submitted plans to the Defendant, City, seeking a zoning certificate approving construction of a single building extending on both Parcel A and Parcel B; the portion on Parcel A to be used primarily for doctors' offices and related activities, and the much larger portion on Parcel B to contain two swimming pools, massage and physical therapy activities, a pro shop, food vending facility and child care facilities; the line of demarcation between the primarily medical uses and the remaining uses is at the line separating the two zoning classifications.

"IX. The stated purpose of the entire development is to provide medical services, therapeutic and recreational facilities to the community for all persons 16 years of age or older for a membership fee.

"X. While the Defendant, Hospital is an Ohio corporation not for profit and has received an income tax exemption pursuant to *Sec. 501(c)(3) of the Internal Revenue Code*, however the Defendant, Hospital, intends to operate this facility at a profit, albeit to fund this Defendant's other charitable functions.

"XI. The Defendant, City, issued the prerequisite zoning and building permits for the project and the Defendant, Hospital, caused quite a bit of site improvements to be made and constructed at least part of the foundations then stopped when this action was commenced.

## "CONCLUSIONS OF LAW

"1. Zoning regulations, because they are in derogation of the common law must be strictly construed against those seeking to restrict the use of real property. *Saunders v. Clark Cty. Zoning Dept.* (1981), 66 Ohio St.2d 259 [20 O.O.3d 244, 421 N.E.2d 152].

"2. The zoning administrator's interpretation of the zoning code should be given deference by the courts. *Franklinton Coalition v. Open Shelter, Inc.* (1983), 13 Ohio App.3d 399 [13 OBR 483, 469 N.E.2d 861].

"3. If the language of the zoning code is clear and unambiguous, there is no need for the courts to apply rules of statutory interpretation. *Symmes Township Board of Trustees v. Smyth* (2000), 87 Ohio St.3d 549 [721 N.E.2d 1057].

"4. Neither the zoning administrator nor the courts may enlarge, modify or extend the provisions of a zoning regulations which are unambiguous and the meaning clear and plain. [*State ex rel. Burrows*] *v. Indus. Comm.* (1997), 78 Ohio St.3d 78 [676 N.E.2d 519]; *Vought Industries, Inc. v. Tracy* (1995), 72 Ohio St.3d 261 [648 N.E.2d 1364].

"5. While *R.C. 1.42* and *R.C. 1.49* are directed to the interpretation of statutes, these two Sections are instructive to courts interpreting local regulations. *McHugh v. Bozorgi* (1982) WL 3679 (Ohio App. 2 Dist.), unreported.

### "DISCUSSION

"*Section 1115.04 Springfield Code of Ordinances* provides in part: 'A building or lot in an R 1A District shall be used only for the following purposes * * * (d) Public and private nonprofit parks, playgrounds, recreational and community center buildings. * * *' This language is clear and unambiguous. It is the use that must be non-profit. Had the Defendant, City's, legislative body intended it to be as asserted by the Defendants, it would have been very simple to provide the operation was to be by an entity operated not for profit.

"The phrase 'recreational and community center buildings' is neither clear nor unambiguous. Applying the above stated rules of construction to language found to be less than specific, this proposed operation bears little resemblance to any dictionary definition of those terms and stretches credulity to in any way believe such an operation was within the intention of the persons drafting and enacting this legislation. The renting of office space to physicians, providing therapeutic services, massages, whirlpools, swimming pools, child care, pro shop, etc. speaks loudly of a business operation. Even the Defendant, Hospital, at least at one point in time, was concerned enough about this to attempt to appease a commercial health spa. The only thing that distinguishes this proposed operation from a commercial health spa is the adjoining provision for medical offices and this does not diminish the overall commercial concept presented in the case *sub judice*.

"While this Court cannot accept nor agree to the interpretation of 'lots' as set forth in paragraph numbered 9 of his affidavit (Exhibit 46) neither is the Court convinced of the validity of the Plaintiffs' argument on this point. Suffice it to say that the failure to provide a 50' set back from the zoning demarcation separating the 3.887 acres from the 19.998 acres tract does not provide any foundation for this decision.

"The Plaintiffs' contention that the Zoning Technician wrongfully concluded that the proposed structure did have 'the exterior appearance of a residential structure' is without merit. The application of that standard is in last analysis a judgment call, a matter involving some discretion. It matters not that this Court may not have reached the same conclusion. The Court is not permitted to substitute its discretion in the matter.

"Similarly the argument of the Plaintiffs that the pro shop, food vending and child care portions of the proposed facility are prohibited 'accessory uses' in this

zoning classification must also fail. This zoning classification permits, *inter alia,* golf courses, country clubs, etc. This Court is aware of no golf course or country club that does not provide a pro shop and often times very elaborate dining facilities. Certainly those were within the contemplation of those who drafted and enacted this code.

"The operation of a venture such, as this proposed Healthplex at a profit by a corporation not for profit, the proceeds from which would be used to further its eleemosynary endeavor is not *per se* offensive but even good motives cannot be cause to violate the integrity of zoning regulations. The end does not justify the means.

"IT IS THEREFORE THE JUDGMENT OF THIS COURT that the [Healthplex] as proposed on the real property with the zoning classifications as presented in this action be declared to not be a permitted use.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant, The Community Hospital of Springfield and Clark County, Ohio, be, and the same is hereby permanently enjoined from constructing the Healthplex as herein presented on the real property under the zoning classifications as presented herein.

"IT IS FURTHER ORDERED AND ADJUDGED that the costs of this proceeding be paid by the Defendants in equal parts.

"Finally, IT IS ORDERED that copies of this Decision, Judgment Entry and Decree shall be served by ordinary mail upon all counsel of record.

"SO ORDERED.

"s/Robert M. Brown

"Robert M. Brown, Judge by Assignment"

The hospital timely appealed, bringing the following four assignments of error:

"1. The trial court erred when, after finding ambiguities in section 1115.01(D) of the Zoning Code of the city of Springfield, it restrictively construed such ambiguities against defendant-appellant's proposed use.

"2. The trial court erred in failing to give any deference to the city of Springfield Zoning Technician's interpretation of Section 1115.01(D) of the city's zoning code.

"3. The trial court erred in interpreting Section 1115.01(D) of the Zoning Code city of Springfield to mean that the uses permitted therein must not generate any 'profit' or be run as a 'business.'

"4. The trial court erred in citing the presence of the medical offices planned for the portion of the lot zoned R–3 as a basis for denying the use proposed for the portion of the lot zoned R–1B."

The Vizzaris' brief, beside contesting the errors assigned by the hospital, sets forth their own three assignments of error in the event this court reverses the trial court's decision and remands for further proceedings, as follows:

"1. The trial court erred when it rejected the appellees/cross-appellants' argument that the city of Springfield's failure to require a buffer between the two zoning lots comprising the subject property did not violate Section 1115.01[4](d) and 1123.01(h)(2) of the city's zoning code.

"2. The trial court erred when it granted the appellant/cross-appellee's motion *in limine*, thereby prohibiting the expert witness testimony of the appellee/cross-appellants' witness, Alan C. Schwab, an expert in the area of city planning.

"3. The trial court erred when it granted the appellant/cross-appellee's motion *in limine*, thereby prohibiting the expert witness testimony of the appellee/cross-appellants' witness, Alan C. Duvall, an expert in the area of tax and accounting."

We turn first to the "nonprofit" issue raised in the hospital's third assignment of error.

Because zoning regulations limit the use to which real property may be put, their application should be determined with primary reference to the nature and character of the activity that a proposed use involves. We agree that the term "nonprofit," as it is used in Section 1115.01, does not exclude any particular activity merely because it generates revenue. However, the disposition to which the revenue is put offers little, if any, rational basis to limit the use of property that generates it. Here, for example, the lack of equity shareholders among which net revenues may be distributed makes no real difference with respect to the nature and character of the use that Community Hospital proposes to make of its real property.

Returning to the concept of use, the better method of defining "nonprofit" in the context of the issue presented is to view it as the obverse of a use that must yield a profit to realize its purpose, which cannot be achieved unless a profit is ultimately realized. Such a purpose is most commonly pursued in *trade*, that is, the business of buying and selling of goods or services, which is the very definition of "commerce." Therefore, any use that is plainly *commercial* in its nature and character is not one that is "nonprofit," as Section 1115.04 employs that term.

The trial court, looking at the activities to be conducted at the Healthplex, found that the "renting of office space to physicians providing therapeutic services, massages, whirlpools, swimming pools, child care, pro shop, etc., speaks loudly of a business operation." The point the court made is that these activities portray a use that is plainly commercial in its nature and character, notwithstand-

ing the disposition of revenues they generate. Indeed, classifying the use in relation to the narrow measure of the disposition of revenues created by the use has no relationship to the function of zoning, which is to guide and preserve the character of neighborhoods by limiting the activities that may be carried on the properties located within them.

We have examined the record before us carefully, and we find that the trial court's judgment is supported by competent, credible evidence and we therefore will not reverse it. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579. We hereby approve the judgment of the trial court and adopt it as our own. The hospital's four assignments of error are overruled, and the Vizzaris' first three assignments of error are thereby rendered moot. The judgment of the trial court on the zoning ordinance issue is affirmed.

## II

Subsequent to the decision of the trial court on the zoning issue, the Vizzaris filed a motion seeking reimbursement from the city for their attorney fees on the ground that they were enforcing an ordinance of the city of Springfield. The trial court sets forth its decision and entry on this issue, as follows:

"This cause is before the Court on the motion of the Plaintiffs' Luigi Vizzari and Rosena Ann Vizarri, through counsel, filed herein on March 1, 2000, seeking an order of this Court granting them reasonable attorney fees incurred in presenting this case to the Court. The motion is supported by a memorandum and several exhibits. In response to this motion, the Defendant, The City of Springfield, Ohio, through counsel, filed a memorandum in opposition on March 23, 2000. On March 22, 2000, the Defendant, The Community Hospital, through counsel, also filed a memorandum in opposition. These memoranda prompted a reply memorandum from counsel for Plaintiffs filed on April 4, 2000. Upon due consideration, the Court finds the motion not well taken.

"In the first instance, in spite of the arguments presented by the Plaintiffs, it is questionable whether this Court has jurisdiction at this juncture to consider this motion. The Judgment previously journalized by this Court was a final order. The issue of attorney fees, while claimed in the complaint were not even mentioned, let alone argued in the post-trial memoranda of counsel. Under the doctrine of *res judicata* all issues that were raised as well as all issues that could have been raised under the pleadings are concluded with the journalization of a judgment entry. The cases cited and relied upon by the Plaintiffs with respect to the trial court's jurisdiction to enforce its final orders have no bearing upon the case *sub judice*. The granting or denying attorney fees is not enforcing the judgment of this Court.

"Even going beyond that issue and assuming jurisdiction to determine counsel's compensation, the law as so cogently expounded by counsel makes the motive of the Plaintiffs a salient issue in datelining [*sic*—determining] whether to grant this compensation. It was quite clear, throughout the trial of this cause that the primary concern of the Plaintiffs was to protect their investment in their home and their development of the plat abutting this proposed development. The enforcement of the Defendant City's zoning ordinances was a means to that end. In short, the motivating consideration of the Plaintiffs was their own monetary concerns and not altruistic.

"Finally, the granting or denying [of] attorney fees to the Plaintiffs rests within the sound discretion of the Court. Having considered all factors attendant upon the preparation and presentation of this case, the Court, in its discretion, concludes that the allowance of attorney fees to the Plaintiffs is contra-indicated by the facts of this case.

"IT IS THEREFORE ORDERED that the motion of the Plaintiffs filed herein seeking an order granting them attorney fees be, and the same is hereby, OVERRULED.

"Copies of the within Decision and Judgment Entry shall be mailed by ordinary mail on the date of filing to counsel listed below.

"SO ORDERED.

"s/Robert M. Brown

"Robert M. Brown, Judge by Assignment"

■ The Vizzarris moved for reimbursement of their attorney fees based upon R.C. 733.56, 733.59, and 733.61. Those sections, however, allow, but do not mandate, the award of attorney fees where taxpayers have sued to recover public funds or to force the governmental entity to take some action that it is allegedly required to take. Those purposes are not evident from this record. As the city of Springfield points out in its brief: "Finally, Vizzari cites no cases, and City's counsel could find no case, in the entire jurisprudence of the State of Ohio in which any court had ever awarded attorney fees to a litigant under Revised Code Section 733.61 in the context of a claim that a zoning permit should not have been issued on [the] ground that the zoning code was not met by the applicant's circumstance."

■ It is well accepted, and needs no citations of authority, that an award of attorney fees to a successful litigant is peculiarly within the trial court's discretion. We cannot find an abuse of discretion here, as the trial court's attitude is plainly not unreasonable, arbitrary, or unconscionable. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308–1309.

■ We note, in passing, that the trial court's expressed doubts about its jurisdiction to entertain the attorney-fee issue are not well founded. It is generally accepted that requests for reimbursement of attorney fees are usually made only after the decision on the merits of the case has been rendered. See, *e.g., State ex rel. White v. Cleveland* (1973), 34 Ohio St.2d 37, 295 N.E.2d 665, 63 O.O.2d 79.

The Vizzaris' fourth assignment of error is overruled, and the trial court's judgment denying reimbursement of attorney fees to the Vizzaris is affirmed.

*Judgment affirmed.*

FAIN and GRADY, JJ., concur.