OPINION
{¶ 1} Lamar Outdoor Advertising, Inc., appeals from the trial court's judgment entry affirming a Dayton Board of Zoning Appeals decision that rejected Lamar's application to erect a billboard.
 {¶ 2} In its sole assignment of error, Lamar contends the trial court erred in upholding the BZA's determination that three contiguous city lots with the same owner and the same use constitute one "premises" under a zoning ordinance regulating the placement of billboards. In our view, the BZA's interpretation of the ordinance was reasonable, and the trial court did not err in affirming the BZA's decision. Accordingly, we will affirm the judgment of the Montgomery County Common Pleas Court.
 I. Factual and Procedural Background {¶ 3} Lamar applied to the City of Dayton Zoning Department to erect two billboards on property owned by Calvin Tawney Movers, Inc. The subject property is comprised of three contiguous city lots identified as lots 2989, 2990, and 2991. The three lots are the site of a commercial building and associated parking area. In July, 2001, a zoning administrator issued a permit for Lamar to erect a billboard on lot 2989. The following month, the zoning administrator denied Lamar's application to erect a billboard on lot 2991. In support of his decision, the zoning administrator cited R.C.G.O. § 150.363(A), which allows only one billboard "per premises in individual ownership," and R.C.G.O. § 150.399(F)(2), which prohibits a billboard from being placed within 1,000 feet of another billboard.
 {¶ 4} Lamar appealed the zoning administrator's decision to the BZA. Following a public hearing, the BZA upheld the denial of Lamar's application to erect a second billboard. In so doing, the BZA declined to find a violation of the 1,000-foot requirement and based its decision solely on the prohibition against having more than one billboard per premises in individual ownership. Lamar subsequently appealed the BZA's ruling to the Montgomery County Common Pleas Court under R.C. Chapter 2506. In a September 9, 2003, ruling, the trial court affirmed the BZA's decision, agreeing that the three city lots constitute one "premises" for purposes of R.C.G.O. § 150.363(A). This timely appeal followed.
 II. Analysis {¶ 5} In its assignment of error, Lamar argues that the trial court erred in interpreting the term "premises" to include city lots 2989, 2990, and 2991. Lamar insists that each lot constitutes a separate premises under R.C.G.O. § 150.363(A) and, therefore, that it must be allowed to erect a billboard on lot 2991 despite the presence of a billboard on lot 2989.
 {¶ 6} Upon review, we find no merit in Lamar's argument that the term "premises" cannot fairly be interpreted to encompass the three city lots. Although the zoning code does not define the word "premises," it does acknowledge the need for interpretation of its provisions. See R.C.G.O. § 150.04. The zoning code also recognizes that the zoning administrator and the BZA have the authority to interpret its language. See R.C.G.O. § 150.439. We have held that "[w]hen a zoning code authorizes an officer or a board to interpret the code, their interpretation will be upheld if it is a reasonable interpretation." Lockridge OutdoorAdvertising v. Springfield Bd. of Zoning (Oct. 15, 1999), Clark App. No. 99-CA-35, citing Rotellini v. West Carrollton Bd. ofZoning Appeals (1989), 64 Ohio App.3d 17, 24; see also Vizzariv. Community Hosp. (2001), 141 Ohio App.3d 494, 497, 501
(adopting the trial court's conclusion that "[t]he zoning administrator's interpretation of the zoning code should be given deference by the courts"); Interstate Independent. Corp. v.Fayette Cty. Bd. of Zoning Appeals (1997), 123 Ohio App.3d 511,519 (recognizing that a zoning board necessarily must interpret an ordinance to enforce its provisions and upholding a board's interpretation where the interpretation was reasonable); Dick v.Kelleys Island Bd. of Zoning (June 19, 1987), Erie App. No. E-86-63 ("Generally, it is the province of the Board of Building and Zoning Appeals to interpret local zoning regulations.");Kendall v. Bain (March 5, 1985), Athens App. No. 1192 (noting that a zoning board "is vested with the power to interpret the zoning ordinances").
 {¶ 7} In the present case, we believe the BZA's interpretation of the word "premises" in R.C.G.O. § 150.363(A) is reasonable and correct. As the trial court recognized, a common dictionary definition of the word "premises" is "a tract of land including its buildings" or "a building together with its grounds or other appurtenances." Because the three lots at issue consist of a commercial building and its parking lot on an undivided tract of land, the trial court found no error in the BZA's determination that the three lots fit within the dictionary definition of the term "premises."
 {¶ 8} On appeal, Lamar argues that resort to an ordinary dictionary definition is inappropriate because "a contrary intention appears in the regulation." Notably, however, Lamar cites nothing in the zoning code to show that the City of Dayton intended the word "premises" in R.C.G.O. § 150.363(A) to have a meaning other than the dictionary definition ascribed to it by the trial court. Instead, Lamar cites a repealed section of the Dayton building code that defined the term "premises" to mean "[t]he lot and the buildings situated thereon." Lamar also cites the 1995 Ohio Basic Building Code, which defines the term "premises" as "[a] lot, plot or parcel of land, including any structure thereon." In light of these authorities, Lamar argues that a "premises" must be defined as a "lot" for purposes of Dayton's zoning code.
 {¶ 9} We disagree. The repealed section of the building code does not establish that the City of Dayton intended for the word "premises" in its zoning code to have a meaning other than the dictionary definition applied by the trial court. As for the Ohio Basic Building Code, we note that it defines a "premises" as, inter alia, a "parcel of land, including any structure thereon." This definition is not inconsistent with the trial court's dictionary definition of the term "premises" as "a tract of land" or "a building together with its grounds or other appurtenances." As a result, we find no merit in Lamar's argument that applying an ordinary dictionary definition is inappropriate.
 {¶ 10} Lamar next argues that the BZA and the trial court failed to strictly construe the term "premises" in the billboard ordinance and to resolve any ambiguity in its favor. Lamar contends such a construction is required because the ordinance is in derogation of common law and deprives a property owner of certain uses of his land See B.P. Oil Co. v. Dayton Bd. ofZoning Appeals (1996), 109 Ohio App.3d 423, 432. Applying the foregoing maxim of statutory interpretation, Lamar insists that we must construe the term "premises" in R.C.G.O. § 150.363(A) to mean a city lot that has been assigned its own parcel identification number and address. Given that the tract of land at issue consists of three such "lots," Lamar insists that each one constitutes a separate "premises" under the billboard ordinance.
 {¶ 11} Even if we were to accept Lamar's assertion that a "lot" generally is synonymous with a "premises," we would find no error in the decision reached by the BZA and the trial court. Lamar suggests, and we agree, that the city lots at issue more accurately may be identified as three separate "lots of record" under R.C.G.O. § 150.03508. That provision defines a "lot of record" as "[a] lot that is part of a subdivision * * * or a parcel of land the deed to which was recorded * * *." Notably, another portion of the zoning code, R.C.G.O. § 150.03512, provides that multiple "lots of record" may be combined to create a single "zoning lot," which is defined as "[a] parcel of land not separated by street or alley that is designated by its owner or developer at the time of applying for a zoning certificate, as a tract all of which is to be used, developed, or built upon as a unit under single ownership." Id.
 {¶ 12} With regard to lots 2989, 2990, and 2991, the foregoing requirements appear to have been met in the present case, and Lamar does not argue otherwise. The record reflects that a prior owner of these contiguous lots applied for and obtained approval in 1974 to have them developed and used as one parking lot under single ownership. Thus, the three city lots or, more specifically, the three "lots of record" have lost their individual character, at least for zoning purposes. Consequently, even if the term "premises" generally has the same meaning as the term "lot," in the context of the present case the only reasonable conclusion is that the three "lots of record" merged into one "zoning lot" and, therefore, became one "premises in individual ownership" under the billboard zoning ordinance. Although Lamar is correct that zoning laws must be strictly construed against restrictions on land use, this principle does not compel adoption of unreasonable positions. In our view, it would be unreasonable and inconsistent to treat lots 2989, 2990, and 2991 as an undivided unit for purposes of obtaining a zoning permit to construct a parking lot, but as three separate premises for purposes of obtaining a zoning permit to erect a second billboard.
 {¶ 13} Lamar next contends the trial court erred by failing to refer to R.C. § 1.42 and R.C. § 1.49 when interpreting the word "premises" in the billboard ordinance.[1] We find this argument to be unpersuasive. Section 1.42 provides that words in a statute should be read in context and construed according to the rules of grammar and common usage. It adds that when words have acquired a technical or particular meaning, whether by legislative definition or otherwise, they should be construed accordingly.
 {¶ 14} In the present case, the trial court followed the principles of R.C. § 1.42 even though it did not cite the statute. The trial court considered the word "premises" in its context and looked to the common usage of the term. Although Lamar argues that the term "premises" in R.C.G.O. § 150.363(A) has acquired a meaning different than the common dictionary definition, we do not agree. As we explained above, the record does not reveal that the City of Dayton intended for the word "premises" in its zoning code to have a meaning other than the dictionary definition applied by the trial court.
 {¶ 15} We are equally unpersuaded by Lamar's citation to R.C. § 1.49, which provides, among other things, that a court interpreting an ambiguous statute may consider former laws, including laws on the same or similar subjects, and the administrative construction of the statute. Lamar relies on §1.49 to reiterate its argument that the trial court should have sought guidance from a repealed section of the Dayton building code and the 1995 Ohio Basic Building Code to ascertain the meaning of the term "premises" in the Dayton zoning code.
 {¶ 16} As we noted above, the repealed section of the Dayton building code defined the term "premises" to mean "[t]he lot and the buildings situated thereon." Lamar argues that the trial court should have looked to this definition and defined the word "premises" identically in the billboard ordinance at issue. We disagree. Although it may not be inappropriate under R.C. § 1.49
to consider a definition in a repealed building code when construing a zoning ordinance, the definition cited by Lamar is not dispositive. As set forth more fully above, we believe the trial court reasonably adopted a common dictionary definition of the term "premises" in R.C.G.O. § 150.363(A). In any event, the definition cited by Lamar merely equates a "premises" with a "lot." Even if the two words are synonymous, we explained above that the pertinent "lot" in the present case is the single "zoning lot" consisting of three merged "lots of record." It is reasonable to conclude that one zoning lot qualifies as a "premises in individual ownership" under the billboard ordinance.
 {¶ 17} Lamar also cites the 1995 Ohio Basic Building Code, which defines the term "premises" as "[a] lot, plot or parcel of land, including any structure thereon." For the reasons set forth above, however, we conclude that equating the word "premises" with the word "lot" gets Lamar nowhere. Furthermore, insofar as the Basic Building Code alternatively defines the term "premises" as a "plot or parcel of land, including any structure thereon" this definition is consistent with the trial court's dictionary definition of "premises" as "a tract of land including its buildings" or "a building together with its grounds or other appurtenances."
 {¶ 18} Finally, Lamar argues that prior "administrative construction" of the billboard ordinance supports its argument that lots 2989, 2990, and 2991 are separate "premises." In support, it cites a number of instances when the Dayton zoning administrator allegedly has interpreted the term "premises" in a way that would require approval of its billboard application. The BZA responds by arguing that these other instances are distinguishable insofar as they: (1) involve sign permits for properties on opposite sides of the street, unlike the contiguous city lots at issue herein; (2) involve approval of only one billboard application, whereas Lamar seeks to place two billboards on the city lots at issue in this case; (3) involve multiple properties that are not under single ownership, unlike lots 2989, 2990, and 2991, which have the same owner; or (4) involve multiple properties that have different uses, unlike the city lots at issue herein, which share a common use as a parking lot. In response to this attack on the probative value of its examples, Lamar declines to defend their relevance. Instead, it somewhat curiously asserts that "substantial debate about the accuracy of the [e]xamples is not significant to this appeal, and the BZA's extensive `critical summary' of the [e]xamples has no relevance to the appropriateness of Lamar's request for reversal of the trial court's decision." (See Appellant's reply brief at 9).
 {¶ 19} Although Lamar has made no effort to interpret or explain the voluminous evidentiary materials before us concerning its sixteen examples, we have attempted our own review of those documents. It appears to us that most, if not all, of the prior instances cited by Lamar are distinguishable for the reasons set forth by the BZA. As a result, we do not find that prior administrative interpretation of R.C.G.O. § 150.363(A) is at odds with the trial court's definition of the term "premises."
 III. Conclusion {¶ 20} Based on the reasoning set forth above, we overrule Lamar's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.
Grady, J., and Young, J., concur.
[1] Although R.C. § 1.42 and R.C. § 1.49 primarily are concerned with acts of the Ohio General Assembly, we have applied their principles to local ordinances and regulations as well. SeeVizzari, supra, at 498; McHugh v. Bozorgi (Feb. 25, 1982), Montgomery App. No. 7305.