OPINION
{¶ 1} Plaintiffs-appellants, Allen and Donna Boothby, appeal a decision of the Clermont County Court of Common Pleas upholding the grant by defendant-appellee, the Williamsburg Township Board of Zoning Appeals ("BZA"), of a conditional use permit to defendants-appellees, Neil and Deborah Cadwallader.
 {¶ 2} The Boothbys own and reside on a parcel of land located at 4136 Dela Palma Road in Williamsburg Township. They have resided there since 1971. The Cadwalladers own and reside on a parcel of land located at 4134 Dela Palma Road. They have resided there since 1990. At the time the BZA granted the conditional use permit to the Cadwalladers, both properties were zoned "A-1, Agricultural" under the Williamsburg Township Zoning Resolution (the "zoning resolution"). The Cadwalladers' property is located directly behind the Boothbys' property and is connected to Dela Palma Road by a gravel lane several hundred feet long. Neil Cadwallader puts new gravel on the lane every year.
 {¶ 3} The Cadwalladers own and operate a trucking and excavation business. It is undisputed that they do not excavate on their Dela Palma property. Until 1995, they stored their trucks and equipment in a building in the village of Williamsburg. In 1995, the Cadwalladers tore down a barn that was on their Dela Palma property and replaced it with a new building (51 feet by 75 feet). The Cadwalladers have been storing their trucks and equipment on their Dela Palma property since 1995. The trucks regularly travel to and from the property, six days a week.
 {¶ 4} In 1999, following a complaint by the Boothbys, the Cadwalladers filed an application with the BZA seeking a conditional use permit as a home occupation for their property, or in the alternative, a variance from the permitted uses in the zoning resolution. On October 4, 1999, following a hearing during which Allen Boothby testified, the BZA granted the Cadwalladers a conditional use permit as a home occupation. The minutes of the BZA hearing state in part that:
 {¶ 5} "[The attorney for Neil Cadwallader] then asked Mr. Cadwallader questions showing his progression from agricultural to an excavation occupation. He presented exhibits, which showed aerial views of the property in question.
 {¶ 6} "Allen Boothby, John Curry, Beth Dixon, Charles Werden and John Hauck spoke with questions, or for and against the application. Allen Boothby explained the problem as a neighbor, saying he had no complaint about his business, just the dust and traffic on Mr. Cadwallader's property adjacent to his that was annoying. Mr. Korfhagen summed up the application saying he felt the expert opinion by the past zoning administrator led strongly to the first option that this was a case of a home business with conditional use."
 {¶ 7} The Boothbys appealed the BZA's decision to the common pleas court. By entry filed January 3, 2002, the common pleas court upheld the BZA's decision as follows:
 {¶ 8} "This Court, after careful review of the entire record, the hearing conducted on November 9, 2001, and the evidence, finds in favor of * * * Williamsburg Board of Zoning Appeals and * * * Neil and Deborah Cadwallader and dismisses [Allen Boothby's] appeal. In making its finding this Court adopts the findings of fact of the Defendants and further finds that the * * * Board of Zoning Appeal properly interpreted the zoning resolution and properly granted the conditional use permit. The Court further finds that the decision of the Board of Zoning Appeals, is not unconstitutional, illegal, arbitrary, capricious, unreasonable or unsupported by the preponderance of substantial, reliable and probative evidence on the record." This appeal follows in which the Boothbys raise two assignments of error.
Assignment of Error No. 1:
 {¶ 9} "THE COURT OF COMMON PLEAS ERRED WHEN IT UPHELD THE BOARD'S DECISION FINDING THAT THE DEFENDANTS' OPERATION OF A TRUCKING AND EXCAVATION BUSINESS QUALIFIES AS A HOME OCCUPATION UNDER THE ZONING REGULATIONS."
 {¶ 10} R.C. Chapter 2506 governs appeals from decisions from administrative agencies. When reviewing a decision of an administrative agency, a common pleas court is required to weigh the evidence in the record, and whatever additional evidence is admitted under R.C. 2506.03, to determine whether there exists a preponderance of reliable, probative, and substantial evidence to support the agency's decision.Dudukovich v. Housing Authority (1979), 58 Ohio St.2d 202, 207. Based on the entire record, the common pleas court may find that the agency's decision is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence[.]" R.C. 2506.04. On an appeal of a zoning determination, a common pleas court must act under the presumption that the determination of a board of zoning appeals is valid, and the burden of showing invalidity rests on the party opposing the determination. Rotellini v. West Carrollton Bd. of Zoning (1989),64 Ohio App.3d 17, 20.
 {¶ 11} The role of an appellate court is more limited in scope. An appellate court must affirm the decision of the common pleas court unless it finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of substantial, reliable, and probative evidence. Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34.
 {¶ 12} In their first assignment of error, the Boothbys argue that the trial court erred by upholding the BZA's determination that the Cadwalladers' storage of trucks and excavation equipment on their property qualified as a home occupation under the zoning resolution. Specifically, the Boothbys argue that the Cadwalladers' business violates Sections 118 and 806 of the zoning resolution.
 {¶ 13} Section 118 of the zoning resolution defines "home occupation" as "[a]ny occupation or activity carried on by a member of the immediate family residing on the premises, provided there is no commodity sold upon the promises and no mechanical equipment is used except of a type that is similar in character to that normally used for purely domestic or household purposes, and provided that no display will indicate from the exterior that the building or land is being utilized in part for any purpose other than that of the dwelling."
 {¶ 14} Sections 800 through 824 of the zoning resolution apply to the "A-1, Agricultural" zone district. Section 806 governs conditional uses and provides in relevant part that:
 {¶ 15} "The Zoning Board of Appeals may attach such conditions and safeguards as it deems necessary to protect neighboring properties or districts from fire hazards, smoke, noise, odor, dust, or any other detrimental or obnoxious effects incidental to such operations. * * * The Zoning Board of Appeals may grant approval if it determines that the proposed use will not constitute a fire hazard, nor emit smoke, noise, odor or dust which would be obnoxious or detrimental to neighboring properties or districts.
 {¶ 16} "The following uses shall be considered conditional uses and will require written approval of the Zoning Board of Appeals: (1) Rear Dwellings; (2) Mining and extraction of mineral or raw materials; (3) Manufacturing, processing, treating and storing of mineral or raw materials * * *; (4) Radio and television transmitters and antennas; (5) Home occupations such as beauty parlor, barber shop, music school, dancing school, business school or school of any kind with organized classes or similar activities * * *; (6) Private aircraft landing fields if not in conflict with county or state laws."
 {¶ 17} Another provision of the zoning resolution pertinent to the case at bar is Section 802. That provision governs "use regulations" and allows in an "A-1" zone district agriculture, including agriculture buildings and structures, churches, schools, public owned and operated properties, forests, cemeteries, golf courses, hospitals, private clubs, lodges, community buildings, the keeping of farm animals or poultry, and single family residential dwellings.
 {¶ 18} The following evidence was offered during the appeal phase of the proceedings.
 {¶ 19} The Boothbys' house sits 20 feet away from the gravel lane. Donna Boothby testified that the trucks come in and out of the Cadwalladers' property from 6:30 a.m. to 9:00-10:00 p.m. The Boothbys testified that because of the dust generated by the trucks driving up and down the gravel lane, they cannot open their windows, eat outside, or dry their laundry outside. Donna Boothby testified, however, that the traffic on the gravel lane has no effect on her house chores. Both testified that their windows vibrate when the trucks drive by, and that the side of the house close to the lane is gray and more heavily sooted than the other sides. Donna Boothby admitted that the siding of their house was 30 years old and that it had never been power-washed or repainted. She also testified that they used to burn rubbish in their backyard (out of a 55-gallon drum), and that their neighbor next door still burns rubbish. Donna Boothby admitted that plowing fields generates dust. She opined, however, that even in light of all the potential sources of black soot and dust, including plowing, harvesting, and the traffic of trucks up and down Dela Palma Road, the traffic of the Cadwalladers' trucks on the gravel lane was what generated a lot of dust. Allen Boothby admitted telling the BZA that other than the dust, he had no problem with the Cadwalladers' business.
 {¶ 20} Betty Rice, Donna Boothby's mother, lives at 4148 Dela Palma Road, "across the field, * * * about half a mile" from the Cadwalladers. Rice testified that the Cadwalladers have trucks going in and out all day long from 6:00 a.m. to 9:00 p.m., but that the traffic does not "get [her] house too bad." Rice also testified that State Route 32 is at one end of Dela Palma Road and that there is a lot of traffic on Dela Palma Road, including semi-truck traffic going up and down the road all the time. Rice and the Boothbys all testified that Neil Cadwallader's father also used to drive his water truck in and out of his son's property.
 {¶ 21} Todd Reed lives at 4151 Dela Palma Road across from the Cadwalladers. Reed testified that he can see the gravel lane from his property and that there is not a whole lot of traffic on the lane, at the most two trucks a day. Reed testified that the trucks, which are normal size dump trucks, "drive real, real slow" on the lane. Reed has never noticed big clouds of dust. John Curry lives at 4128 Dela Palma Road, to the right of and about as far from the road as the Cadwalladers. Curry testified that the trucks "slow down to a crawl" when they drive on the gravel lane, "no more than five miles an hour." Curry has never observed any dust coming off the trucks.
 {¶ 22} Anthony Siebert was a driver for Neil Cadwallader from August 1997 to August 1998, working five to six days a week from 6:30-8:00 a.m. to 4:00-6:00 p.m. Siebert testified that the building stored two dump trucks, a bulldozer on a flat, a dozer, and a loader/grader. Siebert testified that he rarely brought back the dump truck during the day, and that the traffic on the lane "wasn't constant in and out[.]" With regard to dust, Siebert testified that Neil Cadwallader was always very strict about the speed limit on the lane, "particular[ly] about throwing the gravel off his driveway." Although there was a pile of dirt on the Cadwalladers' property, Siebert never hauled dirt on and off of the property.
 {¶ 23} Neil Cadwallader testified that at the time the BZA granted the conditional use permit, he and his wife owned and stored "three trucks, equipment trailer, [and] excavating equipment" on their Dela Palma property, as well as a bulldozer, a tractor (used on the property for agricultural purposes), and a Bobcat. Neil Cadwallader testified that he used the Bobcat both for agricultural uses (he has hay) and for his excavation business. Neil Cadwallader also testified that his father, who operated a water hauling business, occasionally used to park his water truck on Neil Cadwallader's property. Neil Cadwallader denied that his father operated his water business from Neil's property.
 {¶ 24} Neil Cadwallader also testified that he and his wife were the only two persons residing on the property and carrying on the trucking and excavation business. Neil Cadwallader explained that the pile of dirt on his property was for his own use and to give to friends. Neil Cadwallader denied selling any commodities on his property. He also testified that there were no displays indicating from the exterior that the building or land was used in part for any purpose other than that of the dwelling.
 {¶ 25} Neil Cadwallader further testified he disagreed with the Boothbys' testimony that trucks were coming in and out of his property all day long. Neil Cadwallader testified instead that trucks would typically leave the property in the morning and not come back until the evening unless the weather was inclement. With regard to dust, Neil Cadwallader testified that he had never observed his trucks generate dust. He explained that if he "as much as saw [his drivers] going in and out of there stirring dust or creating anything to be a nuisance to any of the neighbors or anything coming, [he] would terminate them immediately." Neil Cadwallader stated he had never noticed the black soot on the siding of the Boothbys' house. He had, however, observed them burn rubbish in their backyard every other day, which generated "quite a bit of smoke[.]"
 {¶ 26} John Hauck is the township's former zoning inspector (he worked as such for 13½ years). Hauck testified that he drafted the township's zoning resolution with input from the Zoning Commission and the BZA. Hauck stated that the basic definition of "home occupation" is "someone who has an occupation and operates it from their home." Hauck explained that as a group, the BZA, the Zoning Commission, the township trustees, and he purposely chose not to put too many restrictions in the definition because the township was still rural and could not be as restrictive as other communities. Hauck testified that the zoning resolution's definition of "home occupation" does not restrict certain types of businesses and operations in the "A-1" zone district. In his 13-year tenure, the definition has never been challenged.
 {¶ 27} Hauck also testified that home occupation is a common occurrence, especially in agricultural zones. With regard to Section 806 of the zoning resolution which allows conditional uses in the "A-1" zone district, Hauck testified that the presence of the phrase "such as" after "home occupations" meant that the list of home occupations allowed as conditional uses was not an exhaustive list. Hauck testified that the Cadwalladers' operation met the broad definition of home occupation under the zoning resolution (he similarly testified at the hearing before the BZA) because the Cadwalladers were merely using their property to store and drive their trucks and equipment back and forth between their property, where they reside, and their workplace which is off the premises. Hauck further testified that the BZA's decision to grant a conditional use permit for the Cadwalladers' operation was consistent with its handling of other home occupation requests during his tenure.
 {¶ 28} When reviewing the decision of an administrative agency, a common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts. Univ. of Cincinnati v. Conrad
(1980), 63 Ohio St.2d 108, 111. The common pleas court may not, especially in areas of administrative expertise, blatantly substitute its judgment for that of the agency. Dudukovich, 58 Ohio St.2d at 207. Bearing that in mind, and upon reviewing the evidence, we find that the common pleas court did not err by upholding the BZA's determination that the Cadwalladers' business qualified as a home occupation under the zoning resolution.
 {¶ 29} We note at the outset that because zoning laws are in derogation of common law and deprive a property owner of uses of his land to which he would otherwise be entitled, such laws are construed in favor of the property owner, especially where an interpretation of the law is necessary. Cash v. Brookshire United Methodist Church (1988),61 Ohio App.3d 576, 579.
 {¶ 30} We also note that "home occupation" is broadly defined in the zoning resolution. First, it defines home occupation as "any
occupation or activity[.]" (Emphasis added.) Second, it does not require that the occupation or activity be carried on in the house. Rather, it only requires that the activity or occupation be "carried on by a member of the immediate family residing on the premises[.]" Third, it does not define "home occupation" as a conditional accessory use, that is, as a use customarily incidental and subordinate to the principal use of the property (the principal use of the property being residential). Finally, it does not expressly forbid the storage of trucks and/or mechanical equipment. Indeed, the definition does not specifically state what it forbids or excludes as home occupation.
 {¶ 31} Likewise, the zoning resolution is broadly drafted with regard to permitted and conditional uses in an "A-1" zone district. The list of permitted uses in an "A-1" zone district, as set forth in Section 802 of the zoning regulation, is eclectic, ranging from agriculture to private clubs and including, inter alia, schools, cemeteries, and golf courses. Except for agriculture and the keeping of farm animals and poultry, all other permitted uses under Section 802 are hardly agriculture-related. Similarly, the list of conditional uses in an "A-1" zone district, as set forth in Section 806, is eclectic, ranging from mining to home occupations such as beauty parlors. Again, most if not all conditional uses are hardly agriculture-related.
 {¶ 32} With regard to the types of home occupations allowed as conditional uses, the Boothbys argue that home occupation as a conditional use is strictly limited to the types listed in Section 806, namely, "beauty parlor, barber shop, music school, dancing school, business school or school of any kind with organized classes or similar activities," that is, "only non-industrial occupations." We disagree. The inclusion of the phrase "such as" clearly shows that the list of home occupation types is not an exhaustive restrictive list. In addition, the lack of a comma after the phrase "organized classes" indicates that the phrase that follows ("or similar activities") only applies to and modifies "organized classes," not "home occupations." It follows that "similar activities" is not a type of home occupation allowed as a conditional use. Rather, home occupation includes schools of any kind as long as the schools have "organized classes or similar activities."
 {¶ 33} In the case at bar, the record shows that the Cadwalladers are the only two persons residing on their property and carrying on the trucking and excavation business, that no commodities are sold on the premises, and that there are no displays indicating from the exterior that the building or land is used in part for any purpose other than that of the dwelling. The record also shows that the Cadwalladers do not excavate on their property, and that they use their tractor and Bobcat on their property for agricultural uses. There was no evidence that their other mechanical equipment, that is, their trucks and excavation equipment, was used on the property. Rather, the record shows that this mechanical equipment is merely stored on their property until it is driven off to be used off of the premises. The record also shows that the testimony regarding the alleged dust generated by the Cadwalladers' business and covering the Boothbys' house, and the cause of the soot on the Boothbys' house was conflicting.
 {¶ 34} In light of all of the foregoing, and based upon the broad definition of home occupation and the list of allowed conditional uses in the zoning resolution, we find that the common pleas court did not err by upholding the BZA's decision. The preponderance of the evidence supported the BZA's grant of the conditional use permit as a home occupation to the Cadwalladers. The Boothbys' first assignment of error is overruled.
Assignment of Error No. 2:
 {¶ 35} "THE COURT ERRED WHEN IT RELIED ON THE FORMER ZONING INSPECTOR'S INTERPRETATION OF THE REGULATIONS."
 {¶ 36} The Boothbys argue that the common pleas court improperly relied on Hauck's testimony as evidence that the BZA properly interpreted the zoning resolution. The Boothbys assert there was no need to rely on Hauck's testimony as Sections 118 and 806 unequivocally show that "only non-industrial, low impact business that do not pollute the neighborhood with noise, dust or odors will qualify as conditional uses under the zoning regulations." The Boothbys also assert that by relying on this testimony, the common pleas court ignored the words of the zoning resolution in violation of the BZA's intent.
 {¶ 37} The Boothbys' argument suggests that the common pleas court exclusively relied on Hauck's testimony in upholding the BZA's decision. The record does not support the argument. In its journal entry, the common pleas court stated that "after careful review of the entire record, the hearing conducted on November 9, 2001, and the evidence, [the court] finds in favor of [the BZA and the Cadwalladers.] In making its finding this Court adopts the findings of fact of the Defendants and further finds that the [BZA] properly interpreted the zoning resolution and properly granted the conditional use permit." The record shows that within the Cadwalladers' findings of fact, the reference to Hauck's expertise as the former zoning inspector was only one paragraph out of 20. The record also shows that the common pleas court heard the testimony of several witnesses in addition to Hauck's testimony. Nothing in the record suggests or indicates that the common pleas court ignored all but Hauck's testimony.
 {¶ 38} We also find that the Boothbys' first assertion is not well-taken. While the list of types of home occupations in Section 806 seemingly indicates that only non-industrial, low impact businesses are allowed as conditional uses under the zoning resolution, such is not the case when one looks at Section 806 as a whole. In addition to home occupations, Section 806 also lists, inter alia, the mining and extraction of minerals or raw materials, the manufacturing and treatment of minerals or raw materials, and private aircraft landing fields. Such businesses hardly qualify as non-industrial, low impact businesses. Yet, they are allowed as conditional uses.
 {¶ 39} Similarly, we reject the Boothbys' assertion that by relying on Hauck's testimony, the common pleas court ignored the words of the zoning resolution in violation of the BZA's intent. Hauck clearly testified that when he drafted the zoning resolution, it was with input from the Zoning Commission and the BZA. Hauck testified that the drafting of the resolution involved several meetings with the foregoing entities as well as public hearings. Hauck explained that as a group, the BZA, the Zoning Commission, the township trustees, and he purposely chose to have a broad definition of home occupation. Hauck's testimony shows that the BZA's intent was incorporated in the zoning resolution. Hauck's testimony was relevant in explaining why the resolution was drafted the way it was. We find no error in the common pleas court's partial reliance on Hauck's testimony. The Boothbys' second assignment is overruled.
Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.